Filed:  December 11, 1997

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

No. 96-1827
(CA-91-8-3)

Dorothy Killette, etc., et al,

Plaintiffs - Appellees,

versus

E. Wayne Pittman,

Defendant - Appellant.

O R D E R

The Court amends its opinion filed October 22, 1997, as follows:

On page 10, first full paragraph, line 17 -- a new footnote 7 is added at the end of the final sentence of the paragraph, which reads:

> We note that Killette and Pittman also agreed to amend the copyrights to the three songs to reflect joint authorship. Because the district court concluded that the agreement between Killette and Pittman did not provide for a present transfer of the copyrights, the issue of authorship was erroneously presented to the jury. Similarly, the district court erred in deciding whether Pittman was still entitled to writer's royalties.

The previous footnotes 7 and 8 are renumbered 8 and 9, respectively.

For the Court - By Direction

/s/ Patricia S. Connor

Clerk

UNPUBLISHED

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

DOROTHY KILLETTE, personal
representative of the estate of
Ronald B. Killette; NORTH STATE
MUSIC; RONALD B. KILLETTE, III;
SUN COAST MUSIC; KAREN FAITH
KILLETTE; DRIVE-IN MUSIC COMPANY,

No. 96-1827

INCORPORATED,
Plaintiffs-Appellees,

v.

E. WAYNE PITTMAN,
Defendant-Appellant.

Appeal from the United States District Court
for the District of South Carolina, at Columbia.
Matthew J. Perry, Jr., Senior District Judge.
(CA-91-8-3)

Argued: May 5, 1997

Decided: October 22, 1997

Before WILKINSON, Chief Judge, and RUSSELL and
WILLIAMS, Circuit Judges.

_____

Reversed and remanded by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Ira George Greenberg, EDWARDS & ANGELL, New
York, New York, for Appellant. Allen Hyman, LAW OFFICE OF

ALLEN HYMAN, Studio City, California; Daryl G. Hawkins, LEWIS, BABCOCK & HAWKINS, Columbia, South Carolina, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

In 1992, members of the Ronald Killette family, North State Music, and Sun Coast Music (collectively "Killette"), settled a twenty-five year old dispute with Wayne Pittman over who authored and owned the songs "Girl Watcher," "Boy Watcher," and "Girl Watcher/Boy Watcher." Before the ink had dried on the settlement agreement, Killette sought to have it vacated. The district court, however, granted Pittman's motion for an order enforcing the settlement. While Killette's appeal of the district court's order was pending before this Court, Drive-In Music Company (Drive-In) moved for leave to intervene. We remanded the case to the district court to determine the rights, if any, of Drive-In under the terms of the Killette/ Pittman settlement agreement. On remand from this Court, the district court granted Drive-In's motion to intervene, held that the settlement agreement did not provide for a present transfer of the copyright to the three songs, and vacated its previous order enforcing the settlement. The district court also denied Pittman's motion for judgment as a matter of law on Drive-In's successful slander-of-title claim. Pittman now appeals. For the reasons that follow, we reverse and once again remand.

I.

In the spring of 1968, the band "The O'Kaysions" recorded the hit song "Girl Watcher."[1] Killette, the song's publisher, and Pittman, the

_____

[1] The song "Girl Watcher," which eventually climbed to number five on the national pop charts, was considered "Beach Music." Beach music

2

band's lead guitar player, each claim to be the sole author of "Girl Watcher" and several similar compositions, including "Boy Watcher" and "Girl Watcher/Boy Watcher." Killette contends that in January of 1968, he provided the band with a recording of the song "Boy Watcher," and that the popular version of "Girl Watcher" arose from that recording.[2] Pittman argues, however, that he wrote "Girl Watcher" before he met Killette.

In 1988, Killette sued Pittman in the United States District Court for the District of South Carolina.[3] Killette sought a declaration that Pittman had not written "Girl Watcher/Boy Watcher." Pittman answered (and counterclaimed seeking a declaration) that he was the sole author of the original song "Girl Watcher." During this same time period, Killette approached Drive-In, a music publisher located in Los Angeles, regarding a plan to market "Girl Watcher." Despite the lawsuit pending in South Carolina, Killette informed Drive-In that all of Pittman's claims to "Girl Watcher" had been resolved.

On June 26, 1990, Killette assigned to Drive-In a 50% interest in "Girl Watcher" and a 50% interest in the derivative compositions "Boy Watcher" and "Girl Watcher/Boy Watcher." The following month, Drive-In recorded with the Copyright Office its 50% interest in the three songs. In 1992, as a part of its ongoing efforts to market the three songs, Drive-In decided to release a gay version of "Boy Watcher." After Killette objected, Drive-In sued Killette in the United States District Court for the Central District of California for (1) fraud; (2) negligent misrepresentation; (3) breach of contract; (4) copyright infringement; and (5) slander of title.

Meanwhile, on August 25, 1992, Killette and Pittman, through their respective attorneys of record, entered an agreement to settle the

_____

originated in the beach communities of the Carolinas during the 1950s and 1960s and was popular, in part, because its tempo was ideal for Shagging, the official dance of the State of South Carolina. <u>See</u> South Carolina Legislative Manual A-20 (1996).

[2] No recording of the pre-January 1968 version of "Boy Watcher" was ever located or introduced at trial.

[3] This suit was dismissed without prejudice and then refiled in 1991.

3

litigation in South Carolina. The settlement agreement provided, among other things, that Pittman would pay Killette $12,000 within sixty days and that the copyright to the three songs would be amended and reissued to reflect joint ownership and authorship by Killette and Pittman.

On September 11, 1992, Killette and Drive-In entered an agreement to settle the litigation in California. The settlement agreement provided, among other things, that Killette would assign to Drive-In what he purported was his remaining 50% interest in "Girl Watcher." In addition, Drive-In was given the right to reinstate the California action "in the event it is determined that Pittman has any ownership interest in the Girl Watcher Musical Compositions." (J.A. at 1742.)

On September 21, 1992, Killette moved to vacate the settlement agreement with Pittman. Rather than challenging the validity of the settlement, Killette simply argued, without elaboration, that it was "impossible for [him] to accept the Agreement." (J.A. at 42, 46-47.) After a hearing on the matter, the district court rejected Killette's motion to vacate the agreement and granted Pittman's motion for an order enforcing the settlement. In July of 1993, Killette filed a timely notice of appeal.

While that appeal was pending before this Court, Drive-In moved for leave to intervene or, in the alternative, for remand to the district court for consideration of its motion to intervene.[4] Drive-In alleged that it had an interest in the "Girl Watcher" compositions and that the disposition of the current appeal would impair its ability to protect that interest. We remanded "the case to the district court for consideration of Drive-In Music Co.'s motion to intervene and for restructuring of the court's enforcement order to determine the rights, if any, of Drive-In Music Co. under the terms of the [Killette/Pittman] settlement." (J.A. at 49-50.)

On remand, the district court granted Drive-In's motion to intervene. In its complaint-in-intervention, Drive-In asserted that it -- as the assignee under the June 26, 1990, and the September 11, 1992,

_____

[4] Drive-In's motion was uncontested by Killette and contested by Pittman.

4

agreements -- was the 100% owner of the copyright to "Girl Watcher," and the 50% owner of the copyrights to "Boy Watcher" and "Girl Watcher/Boy Watcher." Drive-In also sought a declaration that the Killette/Pittman settlement agreement was subject to the two Drive-In/Killette agreements and that Killette was the sole author of the three songs. In addition, Drive-In sought damages and attorneys' fees against Pittman for slander of title.

Pittman denied Drive-In's allegations and filed a counterclaim seeking a declaration that he authored "Girl Watcher." After discovery, Pittman moved for summary judgment as to the issues raised in Drive-In's complaint. Pittman did not dispute that on June 26, 1990, Killette assigned Drive-In a 50% interest in the three songs. Instead, Pittman argued that he received the remaining 50% interest in the three songs prior to the second Killette assignment to Drive-In. In its own motion for summary judgment, Drive-In contended that the settlement between Killette and Pittman did not provide for a present transfer of the copyrights and, therefore, it was the sole owner of the copyright to "Girl Watcher." After a hearing on the cross-motions for summary judgment, the district court granted Drive-In's motion on the grounds that the Killette/Pittman settlement agreement did not provide for a present transfer of the copyright because the payment of $12,000 was a condition precedent to Killette's performance.

Shortly thereafter, Drive-In's claims against both Killette and Pittman were presented to a jury, which returned a verdict against Pittman on Drive-In's slander-of-title claim and awarded Drive-In damages of $85,000.**5** In addition to its verdict, the jury answered special interrogatories submitted to it with the consent of the parties. The jury found, among other things, that "the `author' of `Girl Watcher' as recorded by the O'Kaysions was Ronald B. Killette." (J.A. at 336.)

After the jury returned its verdict, Killette moved to vacate the district court's previous order enforcing the Killette/Pittman settlement, and Pittman moved for judgment as a matter of law on the slander-of-title claim and for a new trial on the issue of authorship. Finding that it was no longer equitable that its prior order be enforced, the district

_____

**5** In each of Drive-In's claims against Killette, the jury returned verdicts in Killette's favor.

5

court granted Killette's motion to vacate pursuant to Rule 60(b)(5) of the Federal Rules of Civil Procedure. The district court also denied Pittman's motion for judgment as a matter of law on the slander-of-title claim and for a new trial on the issue of authorship. Finally, the district court awarded Drive-In its attorneys' fees and expenses under the Copyright Act. This appeal by Pittman followed.

II.

Pittman contends that the district court erred in granting Killette's post-trial motion to vacate the order enforcing the Killette/Pittman settlement agreement. We review a district court's decision to grant relief from a final order under Rule 60(b)(5) for abuse of discretion. See National Credit Union Admin. Bd. v. Gray, 1 F.3d 262, 265 (4th Cir. 1993). A district court abuses its discretion by applying an incorrect legal standard or by resting its decision on a clearly erroneous finding of material fact. On appeal, Pittman argues that the district court did both.

We turn first to the applicable legal standard. In order to seek relief under Rule 60(b), "a party must first show `timeliness, a meritorious defense, a lack of unfair prejudice to the opposing party, and exceptional circumstances.'" Dowell v. State Farm Fire & Cas. Ins. Co., 993 F.2d 46, 48 (4th Cir. 1993) (quoting Werner v. Carbo, 731 F.2d 204, 207 (4th Cir. 1984)). After a party "has crossed this initial threshold, he then must satisfy one of the six specific sections of Rule 60(b)." Id.

Pittman contends that Killette failed to show the required exceptional circumstances. The district court, however, found that Killette's attorney settled the Pittman litigation without Killette's authorization or knowledge. If true, Killette has adequately demonstrated the existence of exceptional circumstances. See Gray, 1 F.3d at 266 (noting that evidence that attorney signed a party's name to court documents without authority constitutes an exceptional circumstance); see also Petty v. Timken Corp., 849 F.2d 130, 132 (4th Cir. 1988) (noting that "summary enforcement is inappropriate when there is a material dispute about the . . . authority of an attorney to enter a settlement agreement on behalf of his client").

6

Pittman argues that the district court was clearly erroneous in finding that Killette's attorney settled the case without Killette's authorization or knowledge. (Appellant's Br. at 20 (contending that Killette's argument strains credulity).) As support, Pittman notes that Killette was present (and even testified) at the hearing where the district court entered the order enforcing the Killette/Pittman settlement agreement. The district court, however, specifically found that Killette's poor hearing and the courtroom's poor acoustics prevented him from understanding what happened during the hearing.

Even if Killette could not hear what was being said during the hearing, however, it does not follow that his attorney settled the case without his authorization or knowledge. In fact, that conclusion is flatly contradicted by the evidence in the record. First, Killette testified that he was aware that his attorney was attempting to negotiate a settlement with Pittman. Second, during Killette's first (and unsuccessful) attempt to vacate the settlement agreement, he signed a document stating that the "settlement was entered into in good faith." (J.A. at 42.) Even if we accept that Killette's hearing was poor, there is no evidence suggesting that his vision (or his ability to read) was similarly impaired. Finally, in the very order from which Killette seeks relief, the district court specifically found that "Killette admitted accepting the terms of the agreement." (J.A. at 45 n.1.)

Based on the aforementioned evidence, it is clear that Killette authorized his attorney to settle the case, was aware that his attorney had done so, and, despite his poor hearing, understood that the hearing was in response to his motion to vacate the settlement. Killette, it appears, was simply dissatisfied with the terms that his attorney negotiated. It is well established, however, that "the integrity of [a] settlement cannot be attacked on the basis of inadequate representation by the litigant's attorney. In such cases, any remaining dispute is purely between the party and his attorney. Unless the resulting settlement is substantially unfair, judicial economy commands that a party be held to the terms of a voluntary agreement." Petty, 849 F.2d at 133 (citation omitted).

We can see no basis for finding Killette's settlement with Pittman unfair. Killette contends that it is unfair because the jury found that Killette was the sole author of "Girl Watcher" and that Pittman slan-

7

dered the title to "Girl Watcher/Boy Watcher." We find this argument to be without merit. Cases are settled because of the risk that the other side might prevail. Although a favorable jury verdict may demonstrate that a party's decision to settle was ill-advised, it does not "establish unfairness or justify setting aside an otherwise valid agreement." Id.; see also Schwartz v. United States, 976 F.2d 213, 218 (4th Cir. 1992) (noting "that strategic decisions made during the course of litigation," including the decision to settle, "provide no basis for relief under [Rule 60(b)], even though with hindsight they appear wrong").

In sum, Killette has not demonstrated that exceptional circumstances exist and, therefore, does not qualify for relief under Rule 60(b) of the Federal Rules of Civil Procedure. As a result, we conclude that the district court abused its discretion in granting Killette's post-trial motion to vacate the order enforcing the Killette/Pittman settlement.

III.

Having determined that Killette and Pittman are bound by the terms of their settlement agreement, we turn next to the district court's interpretation of those terms. In so doing, we note that settlement agreements are considered contracts and, therefore, must be interpreted as such. See United States v. ITT Continental Baking Co., 420 U.S. 223, 238 (1975). Since contract construction is a question of law, we review the district court's interpretation of the Killette/Pittman settlement agreement de novo. See Nehi Bottling Co. v. All-American Bottling Corp., 8 F.3d 157, 162 (4th Cir. 1993).

Drive-In and Pittman disagree as to whether the settlement agreement between Pittman and Killette operated as a transfer of rights in the copyrights or was merely a promise to transfer those rights in the future. If the former, Pittman's claim to the remaining 50% interest in "Girl Watcher" has priority over Drive-In's competing claim.[6] See 17 U.S.C.A. § 205(d) (West 1996) ("As between two conflicting

_____

[6] Pittman recorded the order enforcing its settlement agreement with the Copyright Office on October 13, 1993. Drive-In recorded its settlement agreement with the Copyright Office on November 5, 1993.

8

transfers, the one executed first prevails if it is recorded . . . at any time before recordation . . . of the later transfer. Otherwise the later transfer prevails if recorded first . . . , and if taken in good faith, for valuable consideration . . . , and without notice of the earlier transfer."). The district court, however, concluded that Pittman's payment of $12,000 was a condition precedent to Killette's performance and, therefore, that the settlement agreement did not provide for a present transfer of the copyrights. For the reasons that follow, we disagree.

Conditions precedent are disfavored in South Carolina, and "may not be implied when [they] might have been provided for by the express agreement." Worley v. Yarborough Ford, Inc., 452 S.E.2d 622, 625 (S.C. Ct. App. 1994). "[W]hether a provision `in a contract constitutes a condition precedent is . . . to be gathered from the language the[ parties] employ.'" Id. at 624 (quoting Ballenger Corp. v. City of Columbia, 331 S.E.2d 365, 368 (S.C. Ct. App. 1985)); see also Effects Assocs., Inc. v. Cohen, 908 F.2d 555, 559 n.7 (9th Cir. 1990) ("Conditions precedent are disfavored and will not be read into a contract unless required by plain, unambiguous language."). "`Words and phrases such as "if," "provided that,""when," "after," "as soon as," and "subject to" frequently are used to indicate that performance . . . has been made conditional.'" See Cobb v. Gross, 354 S.E.2d 573, 574 (S.C. Ct. App. 1987) (quoting Ballenger Corp. , 331 S.E.2d at 368).

The settlement agreement provided, in pertinent part:

> 1. Mr. Pittman shall pay Mr. Killette the sum of $12,000 within sixty (60) days.

> 2. The copyrights to each of the following songs will be amended or reissued to reflect ownership and authorship by Messrs. Killette and Pittman jointly:

>> a. "Girl Watcher"

>> b. "Boy Watcher"

>> c. "Girl Watcher/Boy Watcher"

9

(J.A. at 45.) The language used by the parties in the settlement agreement does not expressly condition the transfer of the copyright upon Pittman's payment of $12,000. Nor does it employ any of the phrases frequently used to indicate that performance has been made conditional. We conclude, therefore, that a condition precedent may not be implied in this case and that the district court erred in so holding.

Whether the Killette/Pittman settlement agreement provided for a present transfer of the copyrights is governed by § 204 of the Copyright Act. See 17 U.S.C.A. § 204(a) (West 1996) (Execution of transfers of copyright ownership). Section 204 provides that "a note or memorandum" is sufficient to transfer the ownership of a copyright. Id. Moreover, a note transferring ownership of a copyright "doesn't have to be the Magna Charta; a one-line pro forma statement will do." Cohen, 908 F.2d at 557. Here, the language employed in the Killette/Pittman settlement agreement is more than sufficient to satisfy the minimum requirements of the Copyright Act. Accordingly, we conclude that the district court erred in holding that the Killette/Pittman settlement agreement did not provide for a present transfer of the copyrights. Because that agreement -- wherein Killette and Pittman agreed to amend the copyrights to the three songs to reflect joint ownership -- was executed and recorded before the second transfer from Killette to Drive-In, Pittman's claim to the remaining 50% interest in "Girl Watcher" has priority over Drive-In's competing claim.**7** See 17 U.S.C.A. § 205(d) (West 1996).

IV.

Finally, Pittman argues that the district court erred in denying his motion for judgment as a matter of law on Drive-In's slander-of-title claim. In actions tried by a jury, the district court may grant a motion for judgment as a matter of law if "a party has been fully heard . . . and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party." Fed. R. Civ. P. 50(a)(1). As a result, judgment as a matter of law is appropriate when a contrary verdict would necessarily be based on speculation or conjecture. See Gairola v. Virginia Dep't of Gen. Servs., 753 F.2d 1281, 1285 (4th Cir. 1985). We review de novo the grant or denial of a motion for judgment as a matter of law. See id. In considering such a motion, we must construe the evidence in the light most favorable to the party against whom the

_____

**7** We note that Killette and Pittman also agreed to amend the copyrights to the three songs to reflect joint authorship. Because the district court concluded that the agreement between Killette and Pittman did not provide for a present transfer of the copyrights, the issue of authorship was erroneously presented to the jury. Similarly, the district court erred in deciding whether Pittman was still entitled to writer's royalties.

10

motion is made. See Garraghty v. Jordan, 830 F.2d 1295, 1302 (4th Cir. 1987).

To maintain a claim for slander of title, Drive-In "must establish (1) the publication (2) with malice (3) of a false statement (4) that is derogatory to plaintiff's title and (5) causes special damages (6) as a result of diminished value of the property in the eyes of third parties." Huff v. Jennings, 459 S.E.2d 886, 891 (S.C. Ct. App. 1995). Pittman argues that Drive-In failed to prove damages. We agree.

Drive-In argues that evidence that Pittman recorded his claims in the Copyright Office was sufficient to prove slander of title. Although "the malice requirement may be satisfied by showing the [recorda-tion] was made in reckless or wanton disregard to the rights of another," id. at 891, proof that Pittman recorded his claims in the Copyright Office is not sufficient to prove damages. After reviewing the record in this case, we do not believe that there was any evidence to show that Drive-In was damaged by Pittman's filing a claim to "Girl Watcher/Boy Watcher" in the Copyright Office. Specifically, no evidence was introduced that Drive-In suffered any monetary loss.[8]

Even if Drive-In did lose money, it failed to show that any dam-ages were "as a result of [the] diminished value of the property in the eyes of third parties." Id. at 891. There was absolutely no evidence that any third-party, let alone a potential licensee, was aware that Drive-In's title to "Girl Watcher" might be infirm. Because Drive-In failed to introduce evidence concerning every element of the offense,

_____

[8] Drive-In concedes that, to the extent that the damage award for its successful slander-of-title claim is solely for attorneys' fees in bringing the action, the granting of attorneys' fees under the Copyright Act for the same fees would not be appropriate. Although we agree with Drive-In's conclusion, i.e., the double recovery of fees is inappropriate, we disagree with its premise. Damages in a slander-of-title claim must be separate from and predate the incurrence of attorneys' fees. Thus, to the extent that the damage award for Drive-In's successful slander-of-title claim is solely for attorneys' fees, the district court erred in failing to grant Pitt-man's motion for judgment as a matter of law. Moreover, because Drive-In failed to establish damages, the district court erred in awarding Drive-In its attorneys' fees and expenses under the Copyright Act.

11

there was no legally sufficient evidentiary basis for a reasonable jury to find for it on the slander-of-title claim. As a result, the district court erred in failing to grant Pittman's motion for judgment as a matter of law.**9**

V.

For the foregoing reasons, the judgment of the district court is reversed and the case is remanded to the district court to enter judgment consistent with this opinion.

REVERSED AND REMANDED

_____

**9** We note that § 301(a) of the Copyright Act "preempts state-law claims if the work is within the scope of the `subject matter of copyright' as specified in 17 U.S.C. §§ 102, 103 and the rights granted under state law are equivalent to any exclusive rights within the scope of federal copyright." Rosciszewski v. Arete Assocs. Inc., 1 F.3d 225, 229 (4th Cir. 1993) (internal quotation marks omitted). Given our disposition on this claim, we need not sua sponte address the issue of whether Drive-In's slander-of-title claim was preempted by § 301 of the Copyright Act. Compare Cramer v. Crestar Fin. Corp., 67 F.3d 294 (4th Cir. 1995) (unpublished) (finding that state-law slander-of-title claim was preempted by § 301 of the Copyright Act); with Lomah Elec. Targetry, Inc. v. ATA Training Aids, 828 F.2d 1021, 1023 (4th Cir. 1987) (noting in dicta that, among other things, a copyright may be subject to the tort of slander of title).

12