### 23529

BROADMOOR APARTMENTS OF CHARLESTON, a South Carolina Limited Partnership, and Town and Campus International, Inc., Respondents/Appellants v. Lanny HORWITZ, Max Schlopy and Berkeley Square Associates, Inc., Appellants/Respondents.

(413 S.E. (2d) 9)

Supreme Court

*William R. Phipps, Bethea, Jordan and Griffin, P.A.,* Hilton Head, *for appellants-respondents Horwitz* and *Berkeley Square Associates, Inc.*

*T. Reeve Sams, Levin, Sams & Grimsley,* Beaufort, *for appellant-respondent Schlopy.*

*Richard S. Rosen* and *Karen E. McCormick, Rosen, Rosen & Hagood,* Charleston, and *Joab Dowling, Jr., Dowling, Sanders, Dukes, Svalina & Williams, P.A.,* Beaufort, *for respondents-appellants.*

Heard Apr. 23, 1991; Decided Dec. 16, 1991.

Reh. Den. Feb. 4, 1992.

CHANDLER, Justice:

Respondents-Appellants, Broadmoor Apartments and Town and Campus International (Broadmoor), instituted suit against Appellants-Respondents, Lanny Horwitz, Berkeley Square Associates, and Max Schlopy, alleging (1) slander of title and (2) abuse of process. The trial court, by directed verdict, dismissed the slander of title action; on abuse of process, Broadmoor was awarded $750,000. All parties appeal.

We affirm.

## FACTUAL BACKGROUND

Town and Campus, as General Partner of Broadmoor, entered into negotiations with Max Schlopy for the purchase of Broadmoor's 305-unit apartment complex in Charleston, South Carolina. On July 2, 1983, Schlopy executed a contract to purchase the complex for $7,400,000. The required $75,000 deposit was subsequently reduced to $50,000 by agreement. Thereafter, Schlopy was contacted on two occasions by Broadmoor's agent, Richard Zitzman, requesting the $50,000 down payment. When it was not received, Zitzman wrote Schlopy on October 18, 1983, advising that Broadmoor would no longer entertain the offer to purchase. Meanwhile, and unbeknownst to Zitzman, Schlopy had written a letter on October 17, 1983, requesting the deposit be reduced to $25,000. Upon receipt of this letter, Zitzman replied on October 25, 1983, advising that $25,000 was unacceptable.

Schlopy *never* made the required $50,000 deposit. Nevertheless, on October 28, 1983, he purported to assign his "Contract of Sale" to Berkeley Square Realty Associates, Lanny Horwitz, President.[1] The assignment included the following:

> ... the Contract of Sale is valid and binding and that the Assignor and Seller have agreed that the deposit to be paid under the contract has been reduced to ... $25,000 ... [to] be paid by Assignee promptly upon consummation of the within assignment.

It also reserved a 10% interest to Schlopy. A "consent" provision contained in the assignment was never signed by Broadmoor.

Thereafter, Horwitz wrote to Broadmoor, advising of the assignment from Schlopy. Prior to this letter, Broadmoor had had no dealings with Horwitz or Berkeley Square.

Under the terms of the original contract, Schlopy had the right to assign his interest, without Broadmoor's consent, *only* if a corporation known as Marc Equity[2] was a partner of the assignee.

---

[1] The assignment was drafted by Horwitz, an attorney, with knowledge of Zitzman's letter to Schlopy advising that Broadmoor would "no longer entertain his offer to purchase" as no deposit had been received. Schlopy is also an attorney, engaged primarily in real estate practice.

[2] Marc Equity was a corporation with which Schlopy was engaged in numerous joint ventures. It was dissolved in 1984.

When Schlopy and Horwitz learned that Broadmoor refused to consent to the assignment, they, belatedly, on November 2, 1983, purported to comply with the terms of the original contract by naming Marc Equity a corporate partner.

Thereafter, on November 6, 1983, Horwitz brought three potential investors to inspect the apartment complex, and was "thrown off" the premises by the on-site manager. On November 7, 1983, Horwitz issued a $50,000 draft to cover the deposit; however, the bank account on which the draft was drawn had a balance of $10. On November 9, 1983, Horwitz wrote to a limited partner of Broadmoor, Cameron Todd, advising of Berkeley's intent to file a lis pendens to enjoin sale of the property.

On November 10, the lis pendens was filed, followed by a summons and complaint seeking specific performance.

In April, 1985, the lis pendens and specific performance actions were resolved in Broadmoor's favor. The trial court held (1) that Schlopy had no enforceable contract to assign and (2) that neither Schlopy nor Berkeley had made the required $50,000 deposit.

Thereafter, Broadmoor sued Schlopy, Horwitz and Berkeley, for slander of title and abuse of process. The slander of title action, by directed verdict, was dismissed; the abuse of process action resulted in a jury verdict of $750,000.

## ISSUE

Were Schlopy, Horwitz and Berkeley entitled to a directed verdict on the abuse of process claim?[3]

## DISCUSSION

In reviewing the denial of a motion for directed verdict, this Court must consider the evidence and all reasonable inferences in the light most favorable to the opposing party. We may not pass upon the veracity of witnesses or determine the case according to what we believe is the weight of the evidence. *Graham v. Whitaker*, 282 S.C. 393, 321 S.E. (2d) 40 (1984); *Godfrey v. Little River Fishing Fleet*, 302 S.C. 426, 396 S.E. (2d) 828 (1990). If there is any evidence tending to prove

---

[3] In its brief, Broadmoore urges affirmance of the verdict in the abuse of process action, or, *alternatively*, it requests the award be upheld on the ground that directed verdict was improper in the slander action. In light of our affirmance, we do not address Broadmoor's exceptions.

the allegations of the complaint, the motion must be denied. *Godfrey, supra.*

There are two essential elements required for an abuse of process action: (1) an ulterior purpose, and (2) a willful act in the use of the process not proper in the regular conduct of the proceedings. *Huggins v. Winn-Dixie Greenville, Inc.,* 249 S.C. 206, 153 S.E. (2d) 693 (1967). As a general rule, liability for an abuse of process extends to all who knowingly participate, aid, or abet in the abuse. *See generally* 1 Am. Jur. (2d), *Abuse of Process* § 17; 72 C.J.S. *Process* § 112. Those who advise or consent to the unlawful acts, or subsequently ratify them, are liable as joint tortfeasors. See, *e.g. Woodring v. Jennings State Bank,* 603 F. Supp. 1060 (D. Neb. 1985); *Alexander v. Unification Church,* 634 F. (2d) 673 (2d Cir. 1980); *Ingo v. Koch,* 127 F. (2d) 667 (2d Cir. 1942). Where there is any evidence of aiding or abetting, the question is one for the jury. *McGann v. Allen,* 105 Conn. 177, 134 A. 810 (1926); *See also Ingo v. Koch, supra; Lambert v. Bruton,* 127 Me. 510, 144 A. 864 (1929). As was stated by the Supreme Judicial Court of Massachusetts in 1887:

> The principle is general, and is applicable to all kinds of abuses outside of the proper service of lawful process, whether civil or criminal, that for every such wrong there is a remedy, not only against the officer whose duty it is to protect the person under arrest, but also against all others who may unite with him in inflicting the injury.

*Wood v. Bailey,* 144 Mass. 365, 11 N.E. 567, 576 (1887).

Adverting to the record before us, we hold that the trial court properly submitted abuse of process to the jury.

In addition to the factual background previously set forth, Horwitz testified that he never had a loan commitment from a bank to purchase the property. Additionally, he admitted that, prior to the assignment, he was aware of Broadmoor's October 18 letter to Schlopy rejecting the offer of purchase. Moreover, despite Horwitz's "unwilling[ness] to put the deposit with the brokers as called for under the contract," (Tr. p. 738), Berkeley moved in July, 1984, to enforce a purported settlement agreement.[4] Lastly,

---

[4] The trial court ruled that no settlement had been reached.

bank records revealed that Berkeley at no time had sufficient funds in its bank account to pay the $50,000 downpayment.

We find ample evidence from which the jury could infer that Berkeley and its president, Horwitz, willfully abused the process, with the ulterior purpose of preventing a sale to third parties in hopes of obtaining financial backing with which to purchase the property at an advantageous price.

Regarding Schlopy, he "assigned" the contract to Berkeley, notwithstanding Broadmoor's rejection of his offer. He then advised Horwitz that he "thought [filing a lis pendens] was a good idea." Further, during the pendency of the lawsuit, he filed an affidavit on Berkeley's behalf, erroneously listing Marc Equity as the assignor and stating "as soon as Mr. Zitzman received my October 17 letter [suggesting a $25,000 deposit] he told me by telephone that the information was satisfactory and the parties would proceed to fulfill the terms of the contract . . ." Nothing in the record supports this affidavit. To the contrary, Mr. Zitzman had explicitly rejected Schlopy's request that the required deposit be reduced from $50,000 to $25,000.

Finally, Schlopy's participation is demonstrated by his retention of a 10% interest under the assignment, and his statement to a Broadmoor agent that, although not a party, he was involved in the lawsuit by virtue of his entitlement to commissions.

Under these facts, the issue of whether Schlopy aided, abetted or consented to the abuse of process was for the jury. Accordingly, the court correctly denied the directed verdict motion.

The remaining exceptions are affirmed pursuant to Rule 23: *Kolb v. Nash*, 245 S.C. 25, 138 S.E. (2d) 417 (1964) (Schlopy's exceptions 8, 13, 17 through 20 and 28); *Jones v. Hamm*, 253 S.C. 283, 170 S.E. (2d) 206 (1969) (Schlopy's exceptions 1 through 3); *Hofer v. St. Clair*, 298 S.C. 503, 381 S.E. (2d) 736 (1989), *Joyner v. St. Matthews Builders*, 263 S.C. 136, 208 S.E. (2d) 48 (1974), *Winburn v. Minnesota Mutual Life Ins. Co.*, 261 S.C. 568, 201 S.E. (2d) 372 (1973) (Berkeley/Horwitz' exceptions 2 and 3, Schlopy's exceptions 4, 5, 6, 7, 9 through 12, and 14 through 16); *Godfrey v. Little River Fishing Fleet*, 302 S.C. 426, 396 S.E. (2d) 828 (1990), *King v. Daniel Interna-*

*tional Corp.*, 278 S.C. 350, 296 S.E. (2d) 335 (1982) (Schlopy's exceptions 26, 29; Berkeley/Horwitz' exceptions 4, 5).

Affirmed.

GREGORY, C.J., and HARWELL, FINNEY and TOAL, JJ., concur.