2363

William A. HUFF, Appellant v. Kathleen P. JENNINGS, Respondent.

(459 S.E. (2d) 886)

Court of Appeals

*O.W. Bannister*, of *Hill, Wyatt, Bannister & Brown;* and *Kenneth C. Porter*, of *Porter & Rosenfeld*, Greenville, *for appellant.*

*Samuel W. Outten*, of *Leatherwood, Walker, Todd & Mann*, Greenville, *for respondent.*

Heard May 2, 1995.

Decided June 19, 1995; Reh. Den. Aug. 10, 1995.

HOWELL, Chief Judge:

William Huff sued attorney Kathleen Jennings for slander of title for filing an allegedly invalid lien against Huff's property. Jennings admitted filing the lien and that Huff had satisfied it, but claimed several defenses to the suit. Both sides moved for summary judgment, and stipulated to certain facts. The trial court granted summary judgment for Jennings, and Huff appeals. We reverse and remand.

Huff was married to Betty Jean Huff (the Wife). They divorced in September 1990. As part of the equitable distribution, the family court awarded the Wife an interest in the marital house and lot. The Wife was represented by Jennings in the divorce and sought an award of attorney's fees from Huff. The divorce decree, however, provided:

> 16. Plaintiff [the Wife], with her attorney, has prevailed on the issue of custody, however, due to Plaintiff's inability to prove the divorce as she requested, I find it fair and equitable for each party to be fully and completely responsible for the prompt discharge and payment of their own attorney's fees and costs associated with this action.

Shortly after the divorce, Huff elected to purchase the Wife's interest, as provided for in the divorce decree. On October 8, 1990, Kenneth Porter, Huff's attorney in the divorce, forwarded to Jennings a deed to be executed by the Wife as part of Huff's buyout of her interest. In a second letter to Jennings, dated October 31, 1990, Porter stated he had received no response from the first letter but that Huff told him the Wife would not sign the deed. Porter also indicated that the Wife stated Jennings no longer represented her, and Porter offered to deal directly with the Wife. Porter added, "I would

rather close this matter through your office as it is my understanding some additional attorney's fees are owed unto you."

On November 3, 1990, Jennings wrote Porter that the Wife refused to sign the deed. Jennings confirmed that she was still the Wife's lawyer and was still owed fees. On November 14, 1990, Jennings filed a lien for unpaid attorneys fees in the amount of $578.36 (plus interest) against the house and lot, purportedly under S.C. Code Ann. § 20-3-145.[1] Subsequent to the filing of the lien, Huff closed the purchase of the Wife's interest. Jennings did not receive any of the funds from the sale of the Wife's interest, nor did she receive notice of the closing.

Sometime in 1993, Huff sought to refinance the outstanding debt on the house and lot. Huff's attorney found the lien of record and refused to close the refinancing until the lien and debt were cleared from public records. At that time, Jennings claimed unpaid attorney's fees and interest in the amount of $935.79. On June 8, 1993, Huff wrote Jennings that he discovered the lien, which "was apparently placed against the property when it was still titled in both our names." Huff stated he needed to settle the matter because he needed to refinance his home. Huff paid Jennings $935.79 on July 6, 1993, and Jennings satisfied the lien the same day.

In August 1993, Huff filed this slander of title action against Jennings. In his complaint, Huff alleged that as an attorney, Jennings knew or should have known she had no valid lien against the property, and that filing the lien created a cloud on Huff's title. Huff claimed he suffered damages in the amount of $935.79, the amount he was compelled to pay Jennings. Because he claimed Jennings's actions were wilful and wanton, Huff also sought punitive damages.

Jennings answered and admitted she filed the lien for $578.36, plus 18% per annum interest pursuant to her agreement with the Wife, against Huff's property. She also admitted Huff satisfied the lien on July 6, 1993, by paying $935.79. However, Jennings maintained no action for slander of title

---

[1] Section 20-3-145 provides: "In any divorce action any attorney fee *awarded by the court* shall constitute a lien on any property owned by the person ordered to pay the attorney fee. . . ."

exists in South Carolina, and that Huff, therefore, failed to state a cause of action. As additional defenses, Jennings alleged she acted in good faith, even if her lien was invalid, and that she filed the lien pursuant to § 20-3-145, given the Wife owed her attorney fees and also owned an interest in Huff's house and lot. Jennings contended Huff assumed the risk when he purchased the Wife's interests in the house on November 14, 1990, subject to and with record notice of Jennings's lien. Finally, Jennings asserted that by paying the lien and voluntarily satisfying the Wife's debt, Huff acted on his own as a volunteer and could not recover against Jennings.

The trial court ruled that Jennings's lien was valid and that the Wife did not pay her fees as ordered by the family court; thus, Jennings properly filed a lien against the property of her client pursuant to § 20-3-145. The court further found that because Huff purchased the Wife's interest with notice of Jennings's lien and paid the Wife $11,789.00 without satisfying the lien, the lien was binding on Huff. Moreover, the court held the question of the validity of the lien was moot, because Huff satisfied the lien. The court also found Huff lacked standing to raise any issue as to the validity of Jennings's lien, and that only the Wife could challenge the lien.

As to Huff's claim of slander of title, the trial court found that such a cause of action exists in South Carolina. Relying on a West Virginia case, the court determined the elements of the cause of action to be:

> (1) the publication of (2) a false statement (3) derogatory to plaintiff's title (4) with malice (5) causing special damages (6) as a result of diminished value in the eyes of third parties.

*See TXO Production Corp. v. Alliance Resources Corp.*, 187 W.Va. 457, 419 S.E. (2d) 870 (1992), *aff'd*, — U.S. —, 113 S.Ct. 2711, 125 L.Ed. (2d) 366 (1993). However, the court found Huff's claim failed because there was no evidence that a false statement was made by Jennings, that the filing of the lien was derogatory to Huff's title, that Jennings filed the lien with malice, or that the property was diminished in value in the eyes of a third party. The trial court therefore granted Jennings' motion for summary judgment.

## I.

Huff first argues the trial court erred in holding Jennings had a valid lien against her own client for attorney's fees under S.C. Code Ann. § 20-3-145. We agree.

Under section 20-3-145, any attorney fee awarded by the court in a divorce action shall constitute a lien on any property owned by the person ordered to pay the fee. Thus, the statute authorizes the filing of a lien where the family court actually makes an award of attorney's fees. Simply declaring that each party will be responsible for their own fees does not, as Jennings contends, equate to an "attorney fee awarded by the court" for purposes of the statute. The Wife's complaint requested that Huff pay the Wife's attorney's fees; there was no request that the Wife be ordered to pay her own fees. Under Jennings' interpretation of the order, the family court effectively awarded, without notice to the Wife, an indeterminate amount of fees when such relief was never requested. This interpretation clearly raises substantial ethical and constitutional questions. We therefore conclude that Jennings's lien filed pursuant to S.C. Code Ann. § 20-3-145 was invalid, because she was not awarded a fee by the court.

## II.

Huff also argues the trial court erred in ruling his attack on the validity of the lien was moot since he already had paid Jennings and she discharged the lien. We agree. The lien was attached to Huff's property from November 14, 1990 through July 6, 1993. The fact that the lien was thereafter removed does not extinguish any claim for slander of title Huff may have for the thirty-two months the lien was attached to the property. Accordingly, we hold Huff's claim was not rendered moot by his payment to Jennings to discharge her lien.

## III.

Huff next argues the trial court erred in concluding Huff lacked standing to contest the validity of Jennings's lien. We agree.

To have standing, a party must have a personal stake in the subject matter of a lawsuit, and must be a real party in interest. *Bailey v. Bailey*, 312 S.C. 454, 441

S.E. (2d) 325 (1994). A real party in interest is "one who has a real, actual, material or substantial interest in the subject matter of the action, as distinguished from one who has only a nominal, formal, or technical interest in, or connection with, the action." *Id.* at 456, 441 S.E. (2d) at 327. At the time Jennings filed her lien, the property was owned jointly by Huff and the Wife. Under the circumstances of this case, Huff clearly has standing to litigate whether Jennings's lien against property in which Huff had an ownership interest was valid.

## IV.

By way of an additional sustaining ground, Jennings contends the trial court erred in holding South Carolina recognizes a cause of action for slander of title. We find no error.

While there are South Carolina cases mentioning a slander of title cause of action, *see, e.g., Gambrell v. Schriver,* 312 S.C. 354, 440 S.E. (2d) 393 (Ct. App. 1994), *cert. denied,* (July 14, 1994); *Burgess v. Stern,* 311 S.C. 326, 428 S.E. (2d) 880 (1993), *cert. denied,* — U.S. —, 114 S.Ct. 186, 126 L.Ed. (2d) 145 (1993); *Mountain Lake Colony v. McJunkin,* 308 S.C. 202, 417 S.E. (2d) 578 (1992), there is no reported South Carolina case directly recognizing the cause of action. However, slander of title has long been recognized as a common law cause of action. *See TXO,* 419 S.E. (2d) at 877-79 (thorough discussion of the action for slander of title as it developed under the common law of England). South Carolina Code Ann. § 14-1-50 (1976) provides "All, and every part, of the common law of England, where it is not altered by the Code or inconsistent with the Constitution or laws of this State, is hereby continued in full force and effect in the same manner as before the adoption of this section." Since its enactment in 1712, this reception statute incorporated the body of English common law into the jurisprudence of South Carolina. *See State v. Charleston Bridge Co.,* 113 S.C. 116, 101 S.E. 657 (1919) (South Carolina courts guided by the principles of common law as settled in England); *see also* 6 S.C. Juris. *Common Law* §§ 3-5 (discussion of the reception statute). We therefore agree with the trial court that South Carolina law, through its incorporation of the common law of England, recognizes a cause of action for slander of title.

As noted by the court in *TXO*, the Restatement (Second) of Torts § 623A (1977) provides guidelines which modern courts generally follow in identifying the elements of slander of title. Section 623A provides:

One who publishes a false statement harmful to the interests of another is subject to liability for pecuniary loss resulting to the other if

(a) he intends for publication of the statement to result in harm to interests of the other having a pecuniary value, or either recognizes or should recognize that it is likely to do so, and

(b) he knows that the statement is false or acts in reckless disregard of its truth or falsity.

Section 624 provides:

The rules on liability for the publication of an injurious falsehood stated in § 623A apply to the publication of a false statement disparaging another's property rights in land, chattels or intangible things, that the publisher should recognize as likely to result in pecuniary harm to the other through the conduct of third persons in respect to the other's interests in the property.

From these sections of the Restatement, the West Virginia court determined that, to maintain a claim for slander of title, the plaintiff must establish (1) the publication (2) with malice (3) of a false statement (4) that is derogatory to plaintiff's title and (5) causes special damages (6) as a result of diminished value of the property in the eyes of third parties. *TXO*, 419 S.E. (2d) at 879; *see also* F.P. Hubbard & R.L. Felix, *The South Carolina Law of Torts*, 309, n. 13 (1990) (discussing the Restatement rule). Here, Huff alleged facts sufficient to support a cause of action for slander of title.

Wrongfully recording an unfounded claim against the property of another generally is actionable as slander of title. *TXO*, 419 S.E. (2d) at 880; *see also* W.E. Shipley, Annotation, *Recording of Instrument Purporting to Affect Title as Slander of Title*, 39 A.L.R. (2d) 840 (1955). A jury reasonably could conclude Jennings published a false statement when she filed a lien she knew or should have known

was invalid.[2] *See, e.g., Contract Dev. Corp. v. Beck*, 255 Ill. App. (3d) 660, 194 Ill. Dec. 423, 627 N.E. (2d) 760 (1994), *appeal denied*, 156 Ill. (2d) 556, 202 Ill. Dec. 920, 638 N.E. (2d) 1114 (1994) (recording of mechanics' liens would support slander of title action if plaintiff could establish the liens were recorded despite high degree of awareness that services performed were not lienable). Moreover, given that the family court order did not award fees to Jennings, the statement in the lien that it was filed pursuant to S.C. Code Ann. § 20-3-145 was false.

A publication is derogatory to the plaintiff's title if the publication disparages or diminishes the quality, condition, or value of the property. 50 Am. Jur. (2d) *Libel & Slander* § 551 (1995). Here, Jennings's lien clearly diminished the value of the property in the eyes of a third party, given that Huff was required to discharge the lien before he could complete the refinancing of the property.

In slander of title actions, the malice requirement may be satisfied by showing the publication was made in reckless or wanton disregard to the rights of another, or without legal justification. *Id.* § 555. In the case at bar, a jury could conclude Jennings's interpretation of the family court order and section 20-3-145 was not reasonable, and that Jennings did not file the lien in good faith. A jury likewise might infer malice from the fact that Jennings filed the lien only after learning that Huff was purchasing the Wife's interest in the property.

Finally, the requirement that special damages be suffered is satisfied here. Special damages recoverable in a slander of title action are the pecuniary losses that

---

[2] Jennings also contends that Huff has no claim for slander of title, because the lien was filed against only the Wife's interest in the property and thus did not encumber Huff's interest in the property. In support of this argument, Jennings relied at oral argument on the rule that a cotenant may separately encumber his interest in property, and such encumbrance binds only the cotenant's interest in the property. *See Young v. Edwards*, 33 S.C. 404, 11 S.E. 1066 (1890); 6 S.C. Juris. *Cotenancies* §§ 37-38 (1991). The property was owned by Huff and the Wife at the time the lien was recorded, and the lien specifically states it was placed against the property of William A. Huff and Betty Jean Huff. While it may be true that, had the lien been foreclosed and the property sold, the lien could have been satisfied only through the Wife's interest in the property, the lien nonetheless attached to the property as whole and affected the value of the property as a whole.

result "directly and immediately from the effect of the conduct of third persons, including impairment of vendibility or value caused by disparagement, and the expense of measures reasonably necessary to counteract the publication, including litigation." 50 Am. Jur. (2d) *Libel & Slander* § 560; *accord* Restatement (Second) of Torts § 633. Huff paid Jennings the money demanded in the lien so that he could close the refinancing of the property. The money paid to satisfy the lien was an expense necessary to counteract the publication and, therefore, constitutes special damages. *See Peters Well Drilling Co. v. Hanzula,* 242 N.J. Super. 16, 575 A. (2d) 1375, 1379-81 (Ct. App. Div. 1990) (money in amount to satisfy disputed lien that was placed in escrow pending resolution of dispute constituted special damages for slander of title claim); *Frega v. Northern New Jersey Mortgage Ass'n,* 51 N.J. Super. 331, 143 A. (2d) 885 (Ct. App. Div. 1958) (in case where plaintiff paid defendant the $150 demanded to cancel construction mortgage, and then sued defendant for breach of contract and slander of title, the $150 previously paid to defendant satisfied special damages requirement for slander of title claim).

Therefore, because Jennings's lien filed pursuant to S.C. Code Ann. § 20-3-145 was invalid, and there are facts which a jury could conclude supported a claim of slander of title, the trial court erred in granting summary judgment to Jennings.

Accordingly, for the foregoing reasons, the decision of the trial court is hereby

Reversed and remanded.

GOOLSBY, J., and WILLIAM L. HOWARD, SR., Acting Judge, concur.