THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS 
 PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
Anna Belle Williamson, Appellant,
 v.
 Bermuda Run Investor Development Group, Inc.; Bermuda Run Horizontal Property Regime, now or formerly; Richard S. Clayton, Treasurer of the Board of Directors of Bermuda Run Horizontal Property Regime, now or formerly; Darrel C. Myers, President of the Board of Directors for Bermuda Run Investor Development Group, Inc., now or formerly; Alfred H. Agnew, Secretary/Treasurer of the Board of Directors for Bermuda Run Investor Development Group, Inc., now or formerly;
 O.D. Murray, Jr., Richard S. Clayton, Darrell C. Myers, and Alfred H. Agnew, individually,
 Defendants, 
 of whom Bermuda Run Investor Development Group, Inc. and Bermuda Run Horizontal Property Regime are,
 Respondents.
 
 
 

Appeal From Horry County
 J. Stanton Cross, Jr., Master in Equity

Unpublished Opinion No. 2006-UP-279
Heard May 9, 2006  Filed June 13, 2006  

AFFIRMED IN PART, REVERSED IN PART

 
 
 
Irby E. Walker, Jr., of Conway, and George Thomas Samaha, III, of Little River, for Appellant.
Michael S. Hopewell and C. Pierce Campbell, of Florence, for Respondent Bermuda Run Horizontal Property Regime; and Reynolds Williams, of Florence, for Respondents Bermuda Run Investor Development Group, Inc. and Bermuda Run Horizontal Property Regime.
 
 
 

PER CURIAM:  Anna Belle Williamson, the owner of a condominium at Bermuda Run, brought this action alleging her homeowners association, Bermuda Run Horizontal Property Regime (Bermuda Run), entered into an unauthorized transaction to transfer a common element to the Bermuda Run Investor Development Group (BRIDG).  Bermuda Run and BRIDG (collectively, Respondents) brought counterclaims against Williamson for, among other things, slander of title and tortious interference with economic relations.  The master in equity ruled in favor of Respondents on all claims.  Williamson appeals.  We affirm in part and reverse in part.
FACTS
Bermuda Run is a condominium complex in Horry County consisting of common elements and forty-four separate units.  Williamson is the owner of a condominium at Bermuda Run.  She purchased her unit in August 1985.  
At an annual meeting on May 16, 1998, the board of directors of Bermuda Run adopted a resolution authorizing Bermuda Run to execute the necessary documents to trade its existing driveway to BRIDG, a South Carolina corporation, in exchange for Bermuda Run receiving title to two tracts of property owned by BRIDG that were contiguous to Bermuda Run and obtaining a non-exclusive easement for purposes of ingress and egress.  The resolution stated BRIDG and Bermuda Run also agreed that each would have the use of the others amenities, such as parking areas and other common elements.  Of the four directors of Bermuda Run, only one member, O.D. Murray, voted in favor of the resolution.  The remaining three members, Alfred Agnew, Richard Clayton, and Larry Maust, abstained from voting.[1]    
On June 3, 1999, Bermuda Run recorded a deed transferring title to BRIDG for the driveway leading into Bermuda Run.  Thereafter, on December 30, 1999, Williamson filed a lis pendens and a complaint seeking damages against Bermuda Run, BRIDG, and members and officers of each for allegedly conveying a common element, i.e., the driveway, without the approval of all the Bermuda Run homeowners.  
On June 5, 2000, Williamson filed an amended complaint that included three causes of action:  (1) negligence as to Bermuda Run board members Murray and Clayton, (2) fraudulent conveyance as to all defendants, and (3) ultra vires acts as to Bermuda Run and to Murray and Clayton, individually and as members of the Bermuda Run board of directors.  BRIDG, Agnew, and Myers asserted counterclaims for slander of title and tortious interference with economic relations.  Bermuda Run asserted counterclaims for slander of title, tortious interference with economic relations, and abuse of process.    
The defendants filed motions to dismiss Williamsons claims.  By order dated January 19, 2001, the circuit court, Judge J. Michael Baxley presiding, dismissed the fraudulent conveyance claim as to all defendants, but allowed Williamsons claims based on negligence and ultra vires acts to survive.  Judge Baxley apparently vacated the lis pendens on the property by order on February 5, 2001.[2]  
By order filed June 11, 2001, Judge B. Hicks Harwell of the circuit court ordered Williamson to pay BRIDG, Myers (President of BRIDG), and Agnew (Secretary/Treasurer of BRIDG) attorney fees, costs, and expenses in the amount of $25,000.  Judge Harwell granted the fees pursuant to the South Carolina Frivolous Proceedings Sanctions Act and Rule 11 SCRCP.  He further stated he was granting BRIDGs Motion for Partial Summary Judgment upon liability and for an entitlement to attorney[] fees under its slander of title counterclaim.  Judge Harwell referred to a master in equity the other issues raised in the motion submitted by BRIDG, Agnew, and Myers, including:  (1) whether BRIDG was entitled to partial summary judgment as to liability on its counterclaim for tortious interference with economic relations and (2) whether BRIDG suffered additional damage above its attorney fees for slander of title and, if so, the extent thereof.  
Williamson immediately appealed only the award of attorney fees.  We affirmed on the ground that the issue she raised regarding the fees was not preserved because it was not argued at trial.  See Williamson v. Bermuda Run, 2002-UP-594 (S.C. Ct. App. filed Sept. 26, 2002).    
Williamson, through her attorney, abandoned her negligence claim at the beginning of the proceeding before Master in Equity J. Stanton Cross, Jr. in December 2004.  The master noted that Williamson was proceeding solely on her ultra vires claim and the only other issues before the court were the counterclaims of Respondents.  
At the conclusion of the hearing, the master found Williamson had not established her claim regarding ultra vires acts and had not proved damages.  As to BRIDGs counterclaims, the master applied the law of the case doctrine and found Judge Harwells order precluded Williamsons defense of the slander of title counterclaim.  The master further found BRIDG had proved each element its counterclaim for tortious interference with economic relations, but such finding [was] not necessary to [his] decision because the damage[s] arising from the tortious interference with BRIDGs economic relations are identical to the damages [caused] by [Williamsons] slander of BRIDGs title.  The master awarded BRIDG a judgment of $70,185.24 for the slander of title and tortious interference claims, plus $17,500 in attorney fees and costs.  
As to Bermuda Runs counterclaims for slander of title, tortious interference, and abuse of process, the master granted Bermuda Run a judgment of $445,000.  In finding for Bermuda Run, the master did not specify which cause of action he was basing the award on, but stated, I found the testimony of Dr. Kenneth Eugene Lehrer to have been well-considered, authoritative, probative, and convincing.  Bermuda Run was damaged by the Plaintiff and those damages equal $445,000.[3]  This appeal followed.
STANDARD OF REVIEW
Under the South Carolina Rules of Civil Procedure, summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  Rule 56(c), SCRCP; see also Standard Fire Ins. Co. v. Marine Contracting & Towing Co., 301 S.C. 418, 421, 392 S.E.2d 460, 462 (1990).
When reviewing the grant of a motion for summary judgment, an appellate court applies the same standard applied by the trial court under Rule 56(c), SCRCP.  Fleming v. Rose, 350 S.C. 488, 567 S.E.2d 857 (2002); Ferguson v. Charleston Lincoln Mercury, Inc., 349 S.C. 558, 564 S.E.2d 94 (2002); see also Baird v. Charleston County, 333 S.C. 519, 529, 511 S.E.2d 69, 74 (1999) (Summary judgment is appropriate when it is clear that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law.).  
In determining whether any triable issue of fact exists, the evidence and all inferences which can be reasonably drawn therefrom must be viewed in the light most favorable to the non-moving party.  Summer v. Carpenter, 328 S.C. 36, 42, 492 S.E.2d 55, 58 (1997).  
LAW/ANALYSIS
I.  Ultra Vires Acts
Williamson contends the master erred in finding her allegation of ultra vires acts was not properly brought as a derivative action as required by section 33-31-304 of the South Carolina Code.  We disagree.
Bermuda Run was formed as a South Carolina nonprofit corporation.[4]  Article II of its Articles of Incorporation clearly states the Corporation shall be conducted as a non-profit organization for the benefit of its members.  Article III of the Articles of Incorporation goes on to state [t]he Corporation shall have all of the powers and privileges granted to corporations not for profit under the law pursuant to which this Corporation is chartered.  
Section 33-31-304 of the South Carolina Nonprofit Corporation Act specifically governs ultra vires actions.  See S.C. Code Ann. § 33-31-304 (2006).  It generally provides that a nonprofit corporations power to act may not be challenged as ultra vires unless brought in a specific manner as follows:

(a) Except as provided in subsection (b), the validity of corporate action may not be challenged on the ground that the corporation lacks or lacked power to act. 
(b) A corporations power to act may be challenged in a proceeding against the corporation to enjoin an act where a third party has not acquired rights.  The proceeding may be brought by the Attorney General, a director, or by a member or members in a derivative proceeding. 
(c)  A corporations power to act may be challenged in a proceeding against an incumbent or former director, officer, employee, or agent of the corporation.  The proceeding may be brought by a director, the corporation, directly, derivatively, or through a receiver, a trustee, or other legal representative, or in the case of a public benefit corporation, by the Attorney General. 

Although subsection (b) states the proceeding may be brought by the Attorney General, a director, or by a member or members in a derivative proceeding, the way in which Williamson brought this action does not satisfy any of these options.  It is clear neither the Attorney General nor a director brought the action; therefore, as noted by the master, the only available alternative was for a member or members to bring the action in a derivative proceeding.  Williamson failed, however, to comply with the requirements for bringing a derivative action.  
Rule 23 of the South Carolina Rules of Civil Procedure outlines the requirements for bringing a derivative action as follows:

(b)(1) Derivative Actions by Shareholders. In a derivative action brought by one or more shareholders or members to enforce a right of a corporation or of an unincorporated association, the corporation or association having failed to enforce a right which may properly be asserted by it, the complaint shall be verified and shall allege that the plaintiff was a shareholder or member at the time of the transaction of which he complains or that his share or membership thereafter devolved on him by operation of law.  The complaint shall also allege with particularity the efforts, if any, made by the plaintiff to obtain the action he desires from the directors or comparable authority and, if necessary, from the shareholders or members, and the reasons for his failure to obtain the action or for not making the effort.  The derivative action may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of the shareholders or members similarly situated in enforcing the right of the corporation or association. The action shall not be dismissed or compromised without the approval of the court and notice of the proposed dismissal or compromise shall be given to shareholders or members in such manner as the court directs.

Rule 23, SCRCP.
A derivative action that does not meet the pleading requirements of Rule 23(b)(1), SCRCP, is properly dismissed pursuant to Rule 12(b)(6), SCRCP.  See generally Carolina First Corp. v. Whittle, 343 S.C. 176, 539 S.E.2d 402 (Ct. App. 2000).  Williamson did not plead the necessary information in her complaint to bring a derivative action.  A reading of Williamsons complaint and her testimony at trial shows that she did not bring the action on behalf of the corporation, a group of shareholders, or anyone other than herself.  When specifically asked for whom the lawsuit speaks, Williamson answered she did not speak for any of the other Bermuda Run homeowners.  Williamson did not allege in her complaint that it is a derivative action, and she asked for personal damages in excess of $1.5 million dollars.  She also did not allege in the complaint that a demand was made on the board as required by Rule 23, SCRCP.  Williamson failed to properly plead her derivative claims.  Consequently, she failed to state a claim for ultra vires acts and the master did not err by denying relief on this basis. 
II.  Slander of Title 
Williamson next contends the master erred in ruling slander of title was the law of the case as to BRIDG and in finding for both BRIDG and Bermuda Run on their counterclaims for slander of title.
A.  Law of the Case
In considering BRIDGs counterclaim for slander of title, the master stated BRIDG has been granted judgment on its counterclaim for slander of title based on Judge Harwells order of June 11, 2001 and [t]hat is the law of this case.  Williamson contends this was error as Judge Harwells ruling on this point was not the law of the case.  
That a decree from which no appeal is taken becomes the law of the case in all subsequent proceedings involving the same parties and the same subject matter is the well-settled law in this state . . . .  Matheson v. McCormac, 187 S.C. 260, 263, 196 S.E. 883, 884 (1938).  Law of the case, as a term of art, technically was not the correct term to be used here, as the masters comments could be taken to indicate Judge Harwells order could no longer be appealed.  In Link v. School District of Pickens County, 302 S.C. 1, 6, 393 S.E.2d 176, 179 (1990), however, our supreme court held that when a trial court declares summary judgment on one of several issues in a case, a party can wait to appeal from the final judgment disposing of all issues.  Accordingly, an appeal of the issue of slander of title as it pertains to BRIDG is timely.  
What the master probably intended to convey is that he was not at liberty to reconsider Judge Harwells 2001 ruling as to summary judgment because his mandate as to BRIDG was to consider damages only.[5]  See, e.g., Binkley v. Burry, 352 S.C. 286, 295, 573 S.E.2d 838, 843 (Ct. App. 2002) (Generally, one circuit court judge may not reverse or modify the order of another circuit court judge.).  Any challenge to the grant of summary judgment to BRIDG was properly to be made via an appeal.  We note, however, that to the extent Judge Harwells order awarded $25,000 in attorney fees to BRIDG, the ruling is final because that issue was immediately appealed by Williamson in a prior proceeding and we affirmed the award solely on error preservation grounds.    
B.  Merits
The case of Pond Place Partners, Inc. v. Poole, 351 S.C. 1, 18-19, 567 S.E.2d 881, 890 (Ct. App. 2002) defines slander of title as follows:

The term slander of title is defined as a false and malicious statement, oral or written, made in disparagement of a persons
title to real or personal property, causing him injury.  50 Am.Jur.2d Libel & Slander § 548 (1995).  Generally, an action under slander of title may only be maintained by one who possesses an estate or interest in the affected property.  See generally Jeffrey F. Ghent, Slander of Title: Sufficiency of Plaintiffs Interest in Real Property to Maintain Action, 86 A.L.R.4th 738 (1991).  The tort of slander of title is almost identical to the tort of product disparagement, the only difference being that the former tort involves aspersing the quality of ones title to property and the latter tort involves aspersing the quality of ones property.  Wendys of South Jersey, Inc. v. Blanchard Mgmt. Corp. of N.J., 170 N.J.Super. 491, 406 A.2d 1337, 1338 (Ch.Div.1979).

In Huff v. Jennings, 319 S.C. 142, 459 S.E.2d 886 (Ct. App. 1995), we set forth for the first time in South Carolina a six-point test that a plaintiff must satisfy to maintain an action for slander of title:  

(1) the publication (2) with malice (3) of a false statement (4) that is derogatory to plaintiffs title and (5) causes special damages (6) as a result of diminished value of the property in the eyes of third parties.  

Id. at 149, 459 S.E.2d at 891. 
Though the master found Williamson was liable for slander of title, this was predicated on his determination that Bermuda Run was authorized to enter into the transaction to convey a common element and thus had not committed an ultra vires act.  Williamson purportedly committed slander of title by alleging the transaction was unauthorized.   
[A] corporation may exercise only those powers which are granted to it by law, by its charter or articles of incorporation,
and by any bylaws made pursuant thereto; acts beyond the scope of the powers so granted are ultra vires.  Seabrook Island Property Owners Assn v. Pelzer, 292 S.C. 343, 347, 356 S.E.2d 411, 414 (Ct. App. 1987).
The master found Respondents did not act beyond the powers granted to them by law and the governing documents of Bermuda Run because the sale of property was an authorized transaction.  In so doing, the master relied upon section 33-3-102 of the South Carolina Code, which states in pertinent part:  Unless its Articles of Incorporation provide otherwise, every corporation . . . has the same powers as an individual to do all things necessary or convenient to carry out its business and affairs, including without limitation the power to . . . sell, convey, mortgage, pledge, lease, exchange, and otherwise dispose of all or any part of is property . . . .  S.C. Code Ann. § 33-3-102 (2006).  The master also relied upon the Articles of Incorporation, finding Article 3 expressly allowed Bermuda Run to have all the powers and privileges granted to non-profit corporations.    
Although these provisions generally authorize Bermuda Run to buy, sell, or transfer its land, these provisions do not expressly authorize Bermuda Run to sell property that it does not own.  Both the express language of the Master Deed and the South Carolina Horizontal Property Act, in fact, appear to preclude the actions taken by the board. 
Under the Master Deed, the property at issue is a common element owned solely by the condominium owners.  Any transfer of that property requires the approval of all of the homeowners.  
Paragraph V of the Master Deed for Bermuda Run expressly states:  The percentage of undivided interest in the COMMON ELEMENTS assigned to each UNIT shall not be changed except with the unanimous consent of all the owners of all the units.    
Paragraph VI of the Master Deed prohibits the separate conveyance of the common elements:  The undivided interest in the COMMON ELEMENTS declared to be an appurtenance to each UNIT shall not be conveyed, devised, encumbered or otherwise dealt with separately from said UNIT . . . .  See also 4 S.C. Juris. Condominiums § 18 (1991) (Common elements may neither be conveyed nor encumbered except as an appurtenance to an apartment. . . .  The apartment owners hold title to the regime common elements under a unique arrangement of concurrent ownership, which is neither a simple joint tenancy, since survivorship provisions are absent, nor a tenancy in common, since partition is prohibited.).     
Paragraph X of the Master Deed further provides:  Recognizing that the proper use of a UNIT by any owner or owners is dependent upon the use and enjoyment of the common elements . . . and that it is in the interest of all owners of UNITS that the ownership of the COMMON ELEMENTS be retained in common by the owners of UNITS in the CONDOMINIUM, it is declared that the percentage of the undivided interest in the COMMON ELEMENTS appurtenant to each UNIT shall remain undivided . . . .     
Moreover, the South Carolina Horizontal Property Regime Act states the common elements shall not be divided.  See S.C. Code Ann. § 27-31-70 (1976) (The common elements, both general and limited, shall remain undivided and shall not be the object of an action for partition or division of the co-ownership.  Any covenant to the contrary shall be void.).  It is undisputed that the resolution adopted by Bermuda Run purported to transfer a portion of the common elements to BRIDG without the consent of the owners.  Neither the master nor Respondents cite to any authority expressly authorizing a homeowners association to transfer title to the common elements without the consent of the owners.  
Based on the foregoing, we find the element which requires a false statement cannot be satisfied because Williamson never made false statements concerning the actions of Bermuda Run or BRIDG.  Bermuda Runs transaction was contrary to the provisions of the Master Deed and the Horizontal Property Act.  Thus, we hold the master erred in finding Williamson liable for slander of title and reverse that finding as to both BRIDG and Bermuda Run.
III. Tortious Interference with Economic Relations and Abuse of Process
Williamson also contends the master erred in finding her liable on Respondents counterclaims for tortious interference with economic relations and abuse of process.  We agree.
A.  Tortious Interference
Randy Drew entered into an option agreement to purchase property from BRIDG and purportedly signed a Joint Use Agreement with Bermuda Run in 1999.  Later that year, Drew terminated his option, stating he had only recently become aware that some of the residents objected to the transaction.  Drew was given copies of legal opinions obtained by BRIDG concluding there would be problems in enforcing the agreement in light of the failure to obtain the consent of all of the homeowners.  Drews decision to not exercise his option to purchase was the basis for the counterclaims alleging tortious interference with economic relations.
As to BRIDGs claim, the master found that BRIDG has proven each element of this cause of action because BRIDGs sale of its property to Drew for $595,000 was [] cancelled as a direct and proximate result of [Williamsons] conduct.  The master found the sale probably would have closed on August 1, 2000, but BRIDG had mitigated its damages and sold the property on October 21, 2002 for a net price of $642,100.[6]  The master ultimately concluded BRIDG was entitled to statutory interest of 8.75% from August 1, 2000 to October 21, 2002 for the loss of the use of its $595,000, but this amount was mitigated by the more favorable sales price, for net damages of $70,185.24, plus attorney fees.  
In finding for Bermuda Run, the master did not specify which cause of action he was basing the award on, but summarily stated, I found the testimony of Dr. Kenneth Eugene Lehrer to have been well-considered, authoritative, probative, and convincing.  Bermuda Run was damaged by the Plaintiff and those damages equal $445,000.[7]    
The elements of a cause of action for tortious interference with contract are: (1) existence of a valid contract; (2) the wrongdoers knowledge thereof; (3) his intentional procurement of its breach; (4) the absence of justification; and (5) resulting damages.  Camp v. Springs Mortgage Corp., 310 S.C. 514, 517, 426 S.E.2d 304, 305 (1993).  Again, although the master found Williamson liable for tortious interference with economic relations, this conclusion was predicated on his finding that Bermuda Run had not committed an ultra vires act.  The first element of the claim for tortious interference with economic relations is missing here.  As has been demonstrated above, Bermuda Run did not have the ability to enter into the contract with BRIDG because both the Master Deed and the Horizontal Property Act prohibited it.  Furthermore, for reasons similar to those in deciding the issue of slander of title, the master erred in finding Williamson is liable for tortious interference with economic relations because Williamsons assertion of an ultra vires act has merit and the requisite element of absence of justification is not present.  Drews business decision to terminate the transaction because of the uncertainty as to ownership does not support the claim alleged here for tortious interference.
B.  Abuse of Process
There are two essential elements required for an abuse of process action:  (1) an ulterior purpose, and (2) a willful act in the use of the process not proper in the regular conduct of the proceedings.  Broadmoor Apartments of Charleston v. Horwitz, 306 S.C. 482, 486, 413 S.E.2d 9, 11 (1991).   [T]he issuance of the process may be justified in itself; it is the malicious misuse or perversion of the process for an end not lawfully warranted by it that constitutes the tort known as abuse of process.  Huggins v. Winn-Dixie Greenville, Inc., 249 S.C. 206, 209, 153 S.E.2d 693, 695 (1967).   [A]n abuse of process is the employment of legal process for some purpose other than that which it was intended by the law to effect--the improper use of a regularly issued process.   Id. at 210, 153 S.E.2d at 695 (citation omitted).
Some definite act or threat is required; there is no liability where the party has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions.  Id. at 208, S.E.2d at 694.  The improper purpose usually takes the form of coercion; there is, in other words, a form of extortion, and it is what is done in the course of negotiation, rather than the issuance of the process itself, which constitutes the tort.  Id.  In the current appeal, Williamson could not be found liable for abuse of process when her actions were legitimate.  Though she pled her action incorrectly, the fact that she filed suit cannot support an abuse of process claim.
IV.  Attorney Fees and Costs
Williamson lastly contends the master erred in awarding BRIDG $17,500 in attorney fees and costs.  We agree.
The master found BRIDG was entitled to a total award of attorney fees and costs in the amount of $17,500.  An award of attorney fees will be reversed when the substantive results achieved by counsel are reversed on appeal.  Camburn v. Smith, 355 S.C. 574, 581, 586 S.E.2d 565, 568 (2003); see also Sexton v. Sexton, 310 S.C. 501, 503, 427 S.E.2d 665, 666 (1993).  Accordingly, because we are reversing the award to BRIDG on its counterclaims, we likewise reverse the masters award of $17,500 for attorney fees and costs.
CONCLUSION
Based on the foregoing, we affirm the masters decision to deny Williamsons claim alleging an ultra vires act due to her failure to properly plead the claim as a derivative one.  We reverse the judgments in favor of Respondents on all counterclaims.  
AFFIRMED IN PART, REVERSED IN PART.
HEARN, C.J., and GOOLSBY and ANDERSON, JJ., concur.

[1] Agnew was also an officer of BRIDG.        
[2]  This order is referred to, but not included, in the record on appeal.
[3]  Lehrer submitted an affidavit setting forth an Economy Summary dated December 2, 2004, showing a total of $445,986 in damages.  It included line items for a loss on a purchase option and construction losses.  The largest component in the total was $240,700 for the net present value of future losses from 2003/04 to 2038/39.    
[4]  The record contains a master deed establishing The Bermuda Run Horizontal Property Regime in August 1985.  In addition, the record contains the Articles of Incorporation for the Bermuda Run Property Owners Association, Inc. creating a nonprofit corporation in August 1986.  The parties refer to these organizations interchangeably as Bermuda Run in their briefs.    
[5]  In her brief, Williamson also contends the master erred in finding his mandate was to determine whether BRIDG suffered any damages above and beyond its expenses and attorney fees from her slander of BRIDGs title.  The trial courts June 11, 2001 order clearly mandated that one of the issues to be addressed by the master was [w]hether BRIDG has suffered additional damage, above and beyond its expenses and attorney[] fees, for the Plaintiffs slander of its title . . . .  
[6]  The master refers to both October 1, 2002 and October 21, 2002; the date of sale appears to be October 21, 2002.  The master further indicated his finding as to tortious interference was not necessary to [his] decision . . . because the damage arising from the tortious interference [action is] identical to the damages [from slander of title].    
[7]  In their briefs the parties seem to assume the master awarded damages to Bermuda Run based on all of the claims.  Since the parties read the order as being based on all three claims and we find, in any event, that all of the claims fail on their merits, we address them all here.