24179

Merritt H. KING, III, Respondent v. PYA/MONARCH, INC., Appellant.

(453 S.E. (2d) 885)

Supreme Court

*Charles T. Speth, II, Jeffrey M. Nelson,* of *Haynsworth, Baldwin, Johnson and Greaves, P.A.,* Columbia, *for appellant.*

*James P. Stevens, Jr.,* of *Stevens, Stevens, Thomas & Snook,* Loris, *for respondent.*

Heard Sept. 20, 1994.

Decided Jan. 9, 1995.

CHANDLER, Chief Justice:

In this wrongful termination case, Appellant PYA/Monarch, Inc. (PYA) appeals a judgment in favor of Respondent Merritt H. King (King). We affirm.

## FACTS

King was employed at PYA in August 1983 as a sales representative and was terminated on November 9, 1990, following which King instituted this action for wrongful termination.

At the time of employment, King was given oral assurances of job security, guaranteeing that he could not be terminated without just cause.

In turn, King was required to sign a document entitled "Rules and Regulations." This document states, in part:

> Verbal warnings or written reprimands may be issued to employees by the Supervisors or Warehouse Managers for violations of the following Company rules. *A copy of the reprimand will be placed in the individual's personnel file. At the discretion of the Warehouse Managers one serious violation* of a Company rule, *or an accumulation of three or more reprimands may be considered cause for termination of employment.* (Emphasis supplied.)

The document also states that "[d]isciplinary action will be in accordance with the established policy of the Company."

The only established policy contained in the record is a "Branch Operating Manual" (Manual) setting forth PYA's

"policy and procedures." The Manual emphasizes the impor-
tance of *written* records of an employee's unsatisfactory per-
formance, and requires that a *written* report of each offense
be provided the employee and placed in his personnel file. In-
cluded in the Manual is an "Employee Notice" form containing
four boxes entitled, "First Warning," "Second Warning,"
"Suspension," and "Termination." The Manual also sets forth
a severance pay schedule which was rescinded by PYA in July
1985. Although King and other employees were not given
copies of the Manual, he testified he was aware of its exis-
tence and was told that three warnings would be issued be-
fore termination. King further testified that at time of his em-
ployment, he was advised about PYA's severance pay policy.

In 1988, Rick Barrett became PYA's District Sales Man-
ager and King's immediate supervisor. Barrett testified that
he had numerous discussions with King regarding his job per-
formance. Any deficiencies were documented and written
notes placed in a special file which he personally maintained
on King.

In October 1989, King and other sales representatives were
given a new "Employment Agreement" to sign. This docu-
ment set forth a new sales commission formula and provided
that, in consideration of the new formula, sales representa-
tives were employees-at-will. The agreement further pro-
vided that it superseded all prior agreements and could be
modified or amended only in writing, and signed by both par-
ties. When King objected, he was told that he would be fired
for failure to sign. King signed, but alleged he did so under
duress.

PYA's General Manager, Durwood Owens, testified he met
with King in March 1990 to discuss performance problems.
Owens made detailed notes of the meeting and placed them in
a special file which he personally maintained on King. In April
1990, a second meeting was held with King, at which Owens,
Barrett, and another manager were present. Owens advised
King that, unless his performance improved, he "was gone."

In May 1990, Barrett again met with King concerning his
"collection" problems. Barrett told King he would receive a
written reprimand which would be discussed with the sales
manager. King was given an Employee's Notice and the box
designated "First Warning" was checked. The form noted that

King was "being written up for not turning in collections within Company guidelines. . . ." King testified he was told by his supervisors that two more warnings would be required before termination. This written warning was never placed in King's personnel file. King was terminated on November 9, 1990, no further written warnings having been issued.

King instituted this action for wrongful termination. The case was referred to the Master, with direct appeal to this Court. The Master, sitting without a jury, found the following:

1. PYA's Rules and Regulations and its Manual formed an employment contract at the time of King's hire in 1983;
2. The 1989 Employment Agreement was void for lack of consideration, and had been entered into by King under duress;
3. Even if the 1989 Agreement was valid, it was subsequently modified by PYA's oral assurances, and the act of issuing King a "First Warning" in May 1990; and
4. PYA had breached its employment contract with King by failing to give him three written warnings and by failing to place *any* warnings in his personnel file.

King was awarded a total of $71,605 damages, which included $6,372.45 in severance pay.

## ISSUES
1. Did the Master err in finding that the Rules and Regulations and the Manual created a contract of employment in 1983?
2. Did the Master err in holding that the 1989 Employment Agreement was not valid?
3. If the 1989 Employment Agreement was valid, did the Master err in holding that it was modified by PYA's subsequent oral assurances and its conduct?
4. Did the Master err in calculating King's damages and in awarding severance pay?

## STANDARD OF REVIEW
In an action at law, tried without a jury, the judge's findings will not be disturbed unless they are without evidentiary support. *Townes Assoc. Ltd. v. City of*

*Greenville,* 266 S.C. 81, 221 S.E. (2d) 773 (1976). His findings are equivalent to those of a jury in an action at law. *Id.*

## DISCUSSION

### I. *1983 CONTRACT*

PYA contends that the Manual could not have been relied upon by King to create a contract since it was intended for supervisors' discretionary use only and not for issue to PYA's employees. PYA also asserts that the Rules and Regulations, standing alone, did not create a binding contract. We disagree.

In *Small v. Springs Industries, Inc.,* 292 S.C. 481, 357 S.E. (2d) 452 (1987), this Court held that whether an employer alters the at-will employment status through handbooks, bulletins, oral assurances, and similar materials, is a question for the jury. We noted "[i]t is patently unjust to allow an employer to couch a handbook, bulletin, or other similar material in mandatory terms and then allow him to ignore these very policies as 'a gratuitous, non-binding statement of general policy' whenever it works to his disadvantage." 292 S.C. at 485, 357 S.E. (2d) at 455.

Similarly, in *Leahy v. Starflo,* 314 S.C. 546, 431 S.E. (2d) 567 (1993), this Court rejected a contention that the employer's manual was merely a discretionary guidance tool for managers and was not intended to be binding upon the employer. Here, although the Manual was not distributed to employees, King testified that he was told of its existence and that the Company "followed a three-reprimand system and they could not terminate without cause." Once PYA voluntarily chose to (1) publish the Rules and Regulations and (2) orally assure King that their provisions would be followed in compliance with the Manual, PYA cannot later deviate from these assurances at its own pleasure. *See Small, supra; Leahy, supra.*

Moreover, nothing in the Manual indicates that it is discretionary. Indeed, the introduction to the Manual states that the policies and procedures *"are to be followed* in handling routine activities," and the Company "will have an effective employee relations program only if we all cooperate and *abide by the policies and procedures* developed for our use." (Emphasis supplied.) Further, the Rules and Regulations provide that

disciplinary action *will be* in accordance with "established policy of the Company." Language in the Rules and Regulations points directly to the Manual; this, combined with King's testimony that he was told of the existence and contents of the three-step disciplinary procedure in the Manual, is significant. PYA may not insulate itself from liability by failing to circulate the Manual to employees. This is proscribed by *Small.*

The record contains sufficient evidence to support the Master's finding that a contract of employment was created upon King's 1983 hiring. PYA breached the contract by failing to give King three written warnings, which warnings were required to be placed in his personnel file.

## II. *1989 EMPLOYMENT AGREEMENT*

The Master held that PYA's 1989 attempt to modify King's existing contract was invalid. We disagree.

The issue of unilateral modification of an employment contract was recently addressed by this Court. In *Fleming v. Borden,* 316 S.C. 452, 450 S.E. (2d) 589 (1994), we held that an implied contract of employment created by an employee handbook may be modified by a subsequent employee handbook provided the employee is given *actual notice* of the modification of the handbook.[1]

Here, King received actual notice of the 1989 agreement changing his employment status. This notice is sufficient under *Fleming* to modify the original 1983 employment contract.

## III. *MODIFICATION OF 1989 EMPLOYMENT AGREEMENT*

As an alternate ground, the Master ruled that, even if the 1989 Employment Agreement was valid, it was subsequently modified by PYA's oral assurances and its act of issuing King a "First Warning" in May 1990. We agree.

The general rule is that a written contract may be modified by oral agreement even when the contract expressly states all changes must be in writing. *Evatt v.*

---

[1] We hold the 1989 Employment Agreement here is the equivalent of the subsequent handbook in *Fleming.*

*Campbell,* 234 S.C. 1, 106 S.E. (2d) 447 (1959); *Lazer Construction Company, Inc., v. Long,* 296 S.C. 127, 370 S.E. (2d) 900 (Ct. App. 1988); 17A Am. Jur. *Contracts* § 527 (1991); 17A C.J.S. *Contracts* § 377 (1963). Although South Carolina law has not applied this rule in the context of employment contracts, it has recognized that conditions in an employment contract may be waived. *Leahy v. Starflo, supra* (actions of employer susceptible to inference that employer intended to waive disclaimer); *Johnson v. American Ry. Exp. Co.,* 163 S.C. 191, 161 S.E. 473 (1931) (employer altered the at-will status by entering into an agreement with Union); *Hendrix v. Eastern Distribution,* 316 S.C. 34, 446 S.E. (2d) 440 (Ct. App. 1994) (at-will status altered by employer's assurances to employee that she would not be discharged to avoid paying employee her commissions); *Bookman v. Shakespeare Co.,* 314 S.C. 146, 442 S.E. (2d) 183 (1994) (employee's at-will status limited by employer's sexual harassment policy).

On May 30, 1990, during the period the 1989 Employment Agreement was in effect, PYA gave King a "First Warning," for "not turning in collections within Company guidelines due to negligence and unorganized work habits." The warning was issued on an "Employee Notice" form taken from PYA's Manual. At the time he received this warning, King was told it was the first of a three-warning reprimand and that he would be notified of any other warnings.[2] PYA strongly challenges King's testimony concerning the warnings. However, this was a finding of fact to be reached by the Master. His finding is amply supported by the record. *See Townes, supra.*

## IV. *SEVERANCE PAY/DAMAGES*

Finally, PYA contends that the Master erred in awarding King severance pay and in calculating King's damages.

King testified that, when hired in 1983, he was advised of a severance plan of one week's salary per year of employment. Although the Manual contains such a severance pay policy, PYA issued an internal communication in

---

[2] PYA contends this is impermissible parol evidence. As this occurred subsequent to the execution of the agreement, it is not a prior or contemporaneous statement within the parol evidence rule. *Adamson v. Marianne Fabrics, Inc.,* 301 S.C. 204, 391 S.E. (2d) 249 (1990).

1985 rescinding that policy. However, there is no evidence that King received notice of the rescission. Therefore, under *Fleming*, PYA's rescission was ineffective as to King. The Master correctly awarded severance pay to King.

PYA also asserts error in the Master's computation of damages. We agree with PYA that the Master, having found the 1989 Employment Agreement void, should not have computed the damages under that agreement. However, under our holding that the 1989 Employment Agreement was valid, the error is harmless. The damages are properly to be determined under the 1989 agreement. PYA's modification of the agreement, as discussed earlier, related *only* to the at-will employment status of King, and did not impact upon the commission formula set forth in that agreement. Accordingly, we hold King's damages were properly computed.

Affirmed.

FINNEY, TOAL, MOORE and WALLER, JJ., concur.