Charles F. GILLMOR and Nadine Gillmor, Plaintiffs, Appellees, and Cross–Appellants,

v.

Veigh CUMMINGS; Jeffrey K. Garlick; W. Allan Pelton; Craig Haren; Julie Haren; Gerald Wohlford; Penelope Wohlford; Timber Lakes Corporation, a Utah corporation; and Valley Bank and Trust Company as Trustee for the W. Allan Pelton Trust, Defendants, Appellant, and Cross–Appellee.

No. 940490–CA.

Court of Appeals of Utah.

Sept. 28, 1995.

Lowell V. Summerhays, Murray, for Appellants Veigh Cummings and Timber Lakes.

Gerald H. Kinghorn and R.L. Knuth, Salt Lake City, for Appellees.

Before BILLINGS, GARFF,[1] and JACKSON, JJ.

1. Senior Judge Regnal W. Garff, acting pursuant to appointment under Utah Code Judicial Administration R3–108(4).

## OPINION

JACKSON, Judge:

Veigh Cummings appeals from the trial court's judgment and decree of quiet title, awarding Charles and Nadine Gillmor title to the subject property and special damages in the form of attorney fees. The Gillmors cross-appeal on the amount of attorney fees awarded by the trial court. We affirm in part and reverse and remand in part.

## FACTS

This case concerns a dispute surrounding title to a triangular parcel of ground in Summit County lying to the west of what is commonly referred to as Old Ranch Road. Charles R. Spencer divided his property, deeding the east part to the Gillmors' predecessor under a warranty deed dated October 25, 1926, and the west part to Cummings' grantors, Emil and Bernice Marcellin, under an October 30, 1930 warranty deed. Both deeds from Spencer contain identical boundary line descriptions for the common boundary. The deed from the Marcellins to the Cummings also contains the identical description. The description of the pertinent boundary line, in all three deeds, states as follows:

> thence West approximately 5 rods to a point on the Easterly side of the aforesaid 6 rod wide road and at a point 3 rods Easterly from the center line of said road and at right angles thereto; thence along the Easterly side of said road and 3 rods Easterly from the center line thereof and at right angles thereto, Northerly and Westerly *to a point 3 rods East from the Southwest corner of the Northwest Quarter of Section 28, aforesaid; thence West 3 rods; thence Northwesterly on a direct line 61 rods, more or less, to the point of beginning.*

(Emphasis added).

Cummings asserts that the italicized call must be interpreted so that the boundary line in question necessarily lies on the east side of the road. However, the trial court

found the boundary to be located to the west of the road. The Gillmors contend that even if the pertinent metes and bounds call is to a point on the east side of the road, the evidence shows that the road was moved to the east after the deed was delivered.

When Cummings purchased his property and received his deed, he testified that he did not try to locate any of the boundaries described therein. Rather, he hired a surveyor, Parley Neeley, to survey the property. Cummings instructed Neeley to use the center of the road as his east boundary line.

Cummings subsequently gave certain deeds to Allan Pelton, in which the descriptions allegedly overlap the west boundary of the Gillmors' property. Pelton in turn sold portions of the disputed property under deeds he gave to the remaining defendants. The Gillmors brought an action against Cummings to quiet title and for slander of title damages. The Gillmors also sued Cummings' successors regarding their titles to portions of the disputed property. All defendants except Cummings settled with the Gillmors prior to trial by purchasing title to the property they occupied.

The trial court found that Cummings had slandered the Gillmors' title and awarded the Gillmors special damages in the form of attorney fees and costs.

## ISSUES

■ Cummings claims (1) insufficient evidence exists to support the trial court's finding that the Gillmors are the proper owners of the property and thus, the trial court improperly quieted title in the Gillmors; (2) insufficient evidence exists to support the trial court's determination that the boundary between Cummings' and Gillmors' property was not established by acquiescence; (3) insufficient evidence exists to support the trial court's determination that Cummings, with malice, published documents defaming the Gillmors' title to their property; and (4) the trial court improperly awarded special damages to the Gillmors.[2]

---

**2.** Cummings also claims that the trial court (1) erred in not allowing Cummings to introduce evidence of the value of the property and of the

amounts paid by the title insurer to the Gillmors to support an off-set of damages, and (2) abused its discretion in refusing to allow Cummings to

## ANALYSIS

### Insufficiency of Evidence Claims

 A trial court's findings of fact are reviewed under a clearly erroneous standard. *Alta Indus. Ltd. v. Hurst*, 846 P.2d 1282, 1286 (Utah 1993); *Sorenson v. Kennecott–Utah Copper Corp.*, 873 P.2d 1141, 1147 (Utah App.1994). If, viewing the evidence in the light most favorable to the trial court's determination, a factual finding is based on sufficient evidence, the finding is not clearly erroneous. *State v. Pena*, 869 P.2d 932, 935–36 (Utah 1994); *Greenwood v. City of North Salt Lake*, 817 P.2d 816, 818–19 (Utah 1991); *Clair W. & Gladys Judd Family Ltd. Partnership v. Hutchings*, 797 P.2d 1088, 1090 (Utah 1990) (concluding that even though record contained conflicting evidence, trial court's finding was supported by sufficient evidence).

 The clearly erroneous standard is highly deferential to the trial court's decisions because the witnesses and parties appear before the trial court and the evidence is presented there. *Pena*, 869 P.2d at 936. Thus, the trial judge is "considered to be in the best position to assess the credibility of witnesses and to derive a sense of the proceeding as a whole, something an appellate court cannot hope to garner from a cold record." *Id.* (citing *In re J. Children*, 664 P.2d 1158, 1161 (Utah 1983)).

### 1. Quiet Title

 Cummings claims there is insufficient evidence to support the trial court's finding that the Gillmors are the proper owners of the property and that the trial court improperly quieted title in the Gillmors. The trial court found that the Gillmors' survey witness, James West, "was more credible to the

court in his explanation and opinion concerning the interpretation of the relevant legal description." The court then found that based on West's interpretation of the legal description, Cummings "has never had any interest in the disputed property."

The fundamental dispute concerns the correct interpretation of the following boundary line description: "to a point three rods East from the Southwest corner of the Northwest Quarter of Section 28, aforesaid; thence West 3 rods; thence Northwesterly on a direct line 61 rods, more or less, to the point of beginning." Cummings asserts that the call must be interpreted so that the point "3 rods East from the Southwest corner of the Northwest Quarter of Section 28" necessarily lies on the east side of the road. However, West's interpretation of the deed's call, accepted by the trial court, is that the line leaves the road and does not relate to any monument but rather runs to a theoretical point lying three rods east of the quarter corner.

 If a deed description is unambiguous, its interpretation is a question of law. *Hartman v. Potter*, 596 P.2d 653, 656 (Utah 1979). It is the court's duty to construe instruments as written and deeds are to be construed like other written instruments. *Id.* When a deed is plain and unambiguous, "parol evidence is not admissible to vary its terms." *Id.* We conclude the instant boundary description is unambiguous.[3] The description in question says "to a point." "The words 'to a point' indicate that the limit is not set by a physical feature, but by a theoretical location." Stephen V. Estopinal, *A Guide to Understanding Land Surveys* 171 (1989). If the deed description had intended to use the road to define the boundary, as asserted by Cummings, the description would have fol-

---

raise the defense of adverse possession at trial. We have examined these issues and consider them to be without merit. *See State v. Carter*, 776 P.2d 886, 888–89 (Utah 1989) (finding court may decline to address arguments without merit on appeal). Cummings also asserts the trial court improperly rejected Cummings' counterclaim for slander of title. As discussed below, the first element that Cummings must show to prove slander of title is a publication of a slanderous statement disparaging *his* title. *See First Sec. Bank v. Banberry Crossing*, 780 P.2d 1253,

1256–57 (Utah 1989). Because we find that the trial court properly quieted title in the Gillmors, Cummings never had title to the property in question. Thus, his slander of title claim fails.

3. If an ambiguity exists, such as a metes and bounds call conflicting with a call to a monument, a monument call takes precedence over a call of course or distance. *Williams v. Oldroyd*, 581 P.2d 561, 562 (Utah 1978). We have no such ambiguity here.

lowed the east side of the road to the point of beginning rather than calling to a point 3 rods east of the quarter corner. Here, the deed refers to the section quarter corner and follows from that, not from the road.[4] Accordingly, we find the description to be unambiguous and that sufficient evidence exists to support the trial court's finding that the Gillmors are the proper owners of the described property.

### 2. Boundary by Acquiescence

■■■ Cummings claims that even if the deed description unambiguously states that the property belongs to the Gillmors, the trial court erred by finding that a new boundary was not established by acquiescence. He asserts that no evidence exists in the record to show that a boundary was not established by acquiescence. Thus, he claims the trial court's finding is clearly erroneous. Under the doctrine of boundary by acquiescence, property rights are determined by actual possession of land. *Carter v. Hanrath*, 885 P.2d 801, 804 (Utah App.1994), *cert. granted*, 899 P.2d 1231 (Utah 1995). The elements of this doctrine are (1) occupation up to a visible line marked by monuments, fences, or buildings, (2) mutual acquiescence to the line as a boundary, (3) for a long period of time, generally not less than 20 years, (4) by adjoining landowners. *Id.* (citing *Staker v. Ainsworth*, 785 P.2d 417, 420 (Utah 1990)).

Cummings testified that a fence had been the boundary line since 1964, that a single, identified fence had been recognized as the boundary, that the fence line had never moved, and that no one complained of his occupancy of the property up to the fence. However, the trial court found that Cummings had not established a new boundary by acquiescence.[5]

Contrary to Cummings' assertion that no evidence exists to support the trial court's

finding, the record contains testimony by Frank Marcellin, a long-time resident of the area, that although there was a fence along the west of Old Ranch Road by 1964, that fence was "moved," it was taken down "three or four years later," and a new fence was put up within a year.

■■■ A boundary line must be definite and certain, it "'must have certain physical properties such as visibility, permanence, stability, and a definite location.'" *Englert v. Zane*, 848 P.2d 165, 169 (Utah App.1993) (quoting *Fuoco v. Williams*, 18 Utah 2d 282, 421 P.2d 944, 946 (1966)). The trial court found Marcellin to be a credible witness and questioned the credibility of Cummings as a witness. From Marcellin's testimony, the trial court could find that Cummings failed to show a permanent definite boundary line existed for 20 years or more. Accordingly, we find sufficient evidence to support the trial court's finding that Cummings failed to show by a preponderance of evidence that he had established a new boundary by acquiescence.

### 3. Slander of Title

■■■ Having determined that the trial court properly quieted title in the Gillmors, we now turn to Cummings' claim that he did not slander the title to the Gillmors' property. To prove slander of title, a claimant must prove (1) there was a publication of a slanderous statement disparaging claimant's title, (2) the statement was false, (3) the statement was made with malice, and (4) the statement caused actual or special damages. *First Sec. Bank v. Banberry Crossing*, 780 P.2d 1253, 1256–57 (Utah 1989). Specifically, Cummings claims there is insufficient evidence to support the trial court's determination that Cummings acted with malice in recording and publishing certain deeds containing descriptions which overlap the west boundary of the Gillmors' property.

---

4. Our conclusion is further supported by the description's earlier references to the road and the noticeable lack of reference to the road in the call in question.

5. Throughout the record and briefs, Cummings inconsistently claims the fence, the middle of the road, or the fence and the road as the new

boundary line. However, we find insufficient evidence in the record that Cummings occupied the property in the "thirty or forty" foot space between the fence and the road. Thus, we use the fence as the boundary line for purposes of our boundary by acquiescence analysis.

We believe the record provides sufficient evidence for the trial court's determination of malice. Mr. Cummings testified that he had access to the deeds and the descriptions. However, Mr. Neeley, hired by Cummings to survey his newly acquired property, testified that he had no evidence in his files of receiving any description or deed from Cummings. Rather, he testified that Cummings merely instructed Neeley to survey the middle of the road as the boundary. Neeley testified that the "post survey" he performed indicated he did not have access to any description or deed.[6] Once the post survey was completed, Cummings testified that he did not compare the legal descriptions contained in Neeley's survey with those on his deed. Cummings also testified that he never contacted the Gillmors to see if they agreed with the boundary line. Further, although Cummings states that he was told by Emil Marcellin that the road was the boundary, Marcellin's son testified that Cummings stated to him that he merely "assumed" the road was the boundary. Marcellin's son stated that when he asked Cummings who told him he owned the property, Cummings did not answer. The trial court also found that "the observations by the Court of the defendant Cummings' demeanor as a witness" supported the trial court's decision that Cummings acted with malice.

Cummings claims that despite the above testimony, his testimony "clearly is dispositive by its decisive weight." We do not agree. The trial court was persuaded by Cummings' demeanor as a witness to give little weight to his testimony. Cummings testified that he thought he or someone else gave Neeley a deed or tax notice, but he was not completely sure.[7] He further testified that his attorneys offered a legal opinion that his east boundary line was the road. However, his attorneys did not testify, and there is

no documentation of the alleged legal opinion. Cummings' testimony, standing alone, is insufficient to show that the trial court's finding of malice is against the great weight of evidence. Thus, the finding is not clearly erroneous.

## Special Damages

Cummings next asserts that even if the trial court properly found slander of title, no special damages should be awarded because the Gillmors did not prove that they lost a sale because of Cummings' actions. However, while special damages "are ordinarily proved in a slander of title action by evidence of a lost sale or the loss of some other pecuniary advantage," *Bass v. Planned Management Servs., Inc.*, 761 P.2d 566, 568 (Utah 1988), attorney fees may be recoverable as special damages if incurred "to clear title or to undo any harm created by whatever slander of title occurred." *Id.* at 569.

In turn, the Gillmors claim the trial court improperly awarded only half of the attorney fees incurred as special damages. The trial court found the Gillmors expended the sum of $81,140.27 in legal services and $11,993.50 for survey and engineering costs and for professional survey costs in connection with the litigation. However, the trial court ultimately awarded the Gillmors their costs and "50% of the $81,140.27 in attorney's fees or the amount of $40,570.14." Attorney fees are recoverable as special damages if incurred to remove a cloud placed by a defendant on the title if the elements of slander of title have been proven. *Id.* The trial court explained its ruling as follows:

I do think damages have resulted to the true owner. But ... the court is not going to award the $93,133 damages prayed for.

---

6. Neeley defined a "post survey" as "the area that's being posted by the owner or the owners, outlined by the physical monuments, natural or artificial."

7. As an example of Cummings' performance as a witness, he testified in various portions of the proceedings as follows: (1) "I think we gave a tax notice and the deed to Pat Neeley." (2) "I know we gave him some legal descriptions, whether it was a deed or a tax notice or which

we did give him, there were some descriptions of the property." (3) "I think it was tax notices." (4) "I'm sure that it was tax notices. I think it was tax notices on the ranch." (5) "I'm not sure. Maybe we gave them both." (6) I'm quite sure we gave them tax notices."

When asked whether he was prepared to testify that he gave the deed to Neeley, Cummings responded, "No."

I feel that there has been an escalation of attorney fees as a result of three attorneys being in the case, each one getting geared up. I also think that other matters have gotten involved in this case.

Now of course counsel can argue that the appeal was taken up, that that was a situation as far as the other parties are concerned in the matter, and settling that, and what has taken place. But I'm not persuaded that all of it was done strictly to quiet title to the property.

The court is going to award to the plaintiff the costs of $11,993.50. And that's if my notes are correct. And the court will award 50 per cent of $81,140.27, which, if my notes are correct, was the attorney fees prayed for.

It is not clear from the record or the trial court's findings of fact and conclusions of law the exact amount of attorney fees that the Gillmors incurred to clear their title or undo harm caused by Cummings' slander of title. Further, while we recognize that the trial court's award of attorney fees as special damages is discretionary in slander of title cases, *Day v. West Coast Holdings, Inc.*, 101 Nev. 260, 699 P.2d 1067, 1071 (1985), the award of damages must be made on the basis of findings of fact supported by the evidence. *See Cabrera v. Cottrell*, 694 P.2d 622, 625 (Utah 1985). The trial court has not provided adequate findings of fact concerning the special damages incurred to enable us to conduct a meaningful review of the award. Accordingly, we remand this issue to the trial court to properly determine the amount of damages that should be awarded to the Gillmors consistent with this opinion.

## CONCLUSION

We find sufficient evidence existed to support the trial court's finding that the Gillmors are the proper owners of the disputed property, the boundary between Cummings' and the Gillmors' property was not established by acquiescence, and Cummings acted with malice. Additionally, the trial court properly awarded special damages to the Gillmors, but because the trial court failed to provide adequate findings concerning the

special damages incurred, we remand on this issue. The trial court did not err in refusing admission of evidence concerning the value of the property and of the amounts paid by the title insurer. Further, the trial court properly refused to allow Cummings to raise the defense of adverse possession at trial, and the trial court properly rejected Cummings' counterclaim for slander of title. Accordingly, we affirm in part and reverse and remand the special damages issue.

BILLINGS and GARFF, JJ., concur.