723 S.E.2d 597

**Barbara SOLLEY, Respondent/Appellant,**

**v.**

**NAVY FEDERAL CREDIT UNION, INC., Appellant/Respondent.**

**No. 4937.**

Court of Appeals of South Carolina.

Heard April 5, 2011.

Decided Feb. 1, 2012.

George P. Sibley, III, of Richmond, VA; Mark B. Bierbower, of Washington, D.C.; R. Thayer Rivers, Jr., of Ridgeland; and Stephen A. Spitz, of Charleston, for Appellant/Respondent.

Jared Sullivan Newman, of Port Royal, for Respondent/Appellant.

KONDUROS, J.

Barbara Solley filed suit for conversion, slander of title, and negligence against Navy Federal Credit Union (the Bank) after Jimmy L. Mullins, Sr., with whom she owned a house, obtained a mortgage on the house from the Bank without her knowledge. The Bank was held in default after it failed to answer Solley's complaint. After the special referee required Solley to elect the theory of damages, she proceeded with slander of title and was awarded damages, including punitive damages. Solley appeals the special referee's requiring her to elect her remedy prior to the damages hearing, failing to find she was a consumer under federal regulations, and not allowing her to reform her complaint to conform to the evidence

and issues actually tried. The Bank appeals arguing the default judgment should be vacated because Solley failed to plead the elements for slander of title. The Bank also argues the special referee committed several errors in awarding damages because Solley did not establish she suffered any damages; she did not establish its conduct was willful, wanton, or reckless; and the punitive damages are excessive compared to the actual damages. We affirm in part, reverse in part, and remand.

## FACTS/PROCEDURAL HISTORY

In 2000, Solley and Mullins [1] purchased a house in Jasper County from Solley's sister. [2] Solley's sister gifted Solley the equity in the home, which Solley believed to be approximately $100,000 at the time. Solley and Mullins obtained financing of $100,000 from the Bank to satisfy her sister's outstanding mortgage. Mullins and Solley satisfied that mortgage in 2005 or 2006.

In April of 2006, without Solley's knowledge, Mullins obtained another loan from the Bank on the home amounting to $233,000. [3] The Bank recorded the mortgage with the Register of Deeds in Jasper County. Solley learned of the mortgage in December 2007 and hired an attorney, who contacted the Bank. On January 14, 2008, Mullins filed an action against Solley for partition. Mullins was incarcerated at the time, and his sister filed the action via his power of attorney. On February 13, 2008, Solley filed an answer and counterclaim.

---

1. The two were a couple at the time but not married.

2. Solley asserts they jointly owned the house, while the Bank maintains they owned it as tenants in common. On August 31, 2000, Solley and Mullins signed an agreement that they were purchasing the property as "joint owners with the right of survivorship." Solley's complaint also states she has title to the property "as a joint tenant with rights of survivorship." The special referee's order states the two "jointly owned, as tenants in common," the property. At the time of the damages hearing, the action between Solley and Mullins to determine the property rights to the house was still pending.

3. The parties dispute whether that loan encumbers the entire property or just Mullins's interest. The Banks asserts that the loan only encumbers Mullins's interest.

She also filed a third-party complaint against the Bank, alleging conversion, slander of title, and negligence.

After being properly served, the Bank failed to timely respond and Solley moved for a judgment by default. On July 21, 2008, the court entered an order and entry of judgment against the Bank. The Bank did not pursue having the default set aside. The court severed the third-party action from the original action. The court referred the matter to a special referee to conduct the damages hearing. The Bank appeared at the hearing.

At the hearing, Solley testified that the mortgage had "destroyed [her] life." She stated that she did not know "how to resolve the issue." She could not have visitors because she did not know when she might be forced to leave and where she would go. She further testified that her son and grandchildren grew up in the home. Solley provided that she had not slept a night since this incident had begun and she lost her job, her family, and her grandchildren all because of the mortgage. She indicated she and Mullins had separated when he went to prison in January of 2008 and were no longer together. She testified she has no control over what Mullins will do with the mortgage, and this causes her to suffer from anxiety. She also stated she had to hire an attorney to resolve this matter and has had to expend costs in filing the lawsuit.

Solley offered Raymond Molony, a senior vice president at a different bank, to testify. Molony stated he had worked in the banking business since 1978 and had worked for a number of different banks. The special referee qualified him as an expert witness in banking and mortgages. Molony testified that if the Bank commenced a foreclosure action, it could foreclose on the entire piece of property. He further testified that if the Bank foreclosed and recovered enough funds to satisfy Mullins's mortgage and pay Solley for her interest in the property, she would still be evicted from the property.

A manager at the Bank, Laura Suzanne Hall, was also present at the damages hearing. Solley did not call Hall as a witness, but in response to questioning by the special referee, Hall indicated the mortgage was not in foreclosure. She also testified she did not know who closed the mortgage. She

provided that normally "an attorney would go over the [d]eed." She testified that the loan should have been closed by an attorney in South Carolina. The Bank conceded that no attorney's name was listed on the signature page of the loan.

The special referee found the Bank published a false statement by filing a mortgage Solley was not privy to upon property in which she was an undivided co-owner. The referee found the mortgage was a false statement because it is invalid as Solley does not owe the Bank a debt. The special referee further found malice by the Bank because it had previously accepted a joint mortgage on the property from Solley and Mullins and then recklessly accepted this singular mortgage.

The special referee noted that based on Solley's testimony, the home was worth around $200,000 at the time of the hearing. The referee found that had she wished to borrow against her interest in the home, the "mortgage would have either severely restricted her borrowing power or not enabled her to borrow at all." Solley's expert testified Solley would likely not have been able to obtain a loan on the home due to Mullins's loan. Further, the referee determined the Bank was "entirely culpable for its conduct," which lasted over three years and was still continuing. The referee noted the Bank was in the sole position to mitigate Solley's damages and made no attempt to do so. The referee found Solley presented ample evidence of the Bank's net worth, which allowed it to afford an award of punitive damages. The referee posited the award should punish the Bank and deter subsequent similar conduct by it and other lenders.

The special referee found Solley was entitled to special damages, including actual damages sufficient to satisfy the mortgage on the property and remove the impediment to her title. The referee also found she was entitled to punitive damages, "due to the egregious conduct" of the Bank. Accordingly, the referee awarded Solley $233,000 in actual damages and $400,000 in punitive damages.[4] The Bank filed a motion for reconsideration and to set aside judgment pursuant to Rules 59(a),(e) and 60(b), SCRCP. Solley filed a motion for

---

4. This is a ratio of 1.7:1.

reconsideration of the election of remedies. The referee denied all motions. Both parties appealed.

## STANDARD OF REVIEW

"An action in tort for damages is an action at law." *Longshore v. Saber Sec. Servs., Inc.*, 365 S.C. 554, 560, 619 S.E.2d 5, 9 (Ct.App.2005). In an action at law, the appellate court corrects errors of law, but affirms the special referee's factual findings unless no evidence reasonably supports those findings. *Roberts v. Gaskins*, 327 S.C. 478, 483, 486 S.E.2d 771, 773 (Ct.App.1997). The trial court's findings are equivalent to a jury's findings in a law action. *King v. PYA/Monarch, Inc.*, 317 S.C. 385, 389, 453 S.E.2d 885, 888 (1995). "We must look at the evidence in the light most favorable to the respondents and eliminate from consideration all evidence to the contrary." *Sheek v. Crimestoppers Alarm Sys.*, 297 S.C. 375, 377, 377 S.E.2d 132, 133 (Ct.App.1989). Questions regarding credibility and weight of evidence are exclusively for the trial court. *Id.*

## LAW/ANALYSIS

### I. THE BANK'S APPEAL

#### A. Sufficiency of Solley's Complaint

The Bank argues Solley failed to plead several of the elements of slander and thus the judgment is void. Specifically, it contends the mortgage is not false and Solley did not plead malice, plead special damages, or allege the value of the property was diminished in the eyes of a third party. We find this issue unpreserved.

In *Bardoon Properties, NV v. Eidolon Corp.*, 326 S.C. 166, 168, 485 S.E.2d 371, 372 (1997), the defendant's motion to set aside the default judgment was denied. After a damages hearing, the plaintiff was awarded damages. *Id.* Subsequently, the defendant filed a motion to reconsider in which it raised, for the first time, the plaintiff was not the real party in interest. *Id.* That motion was denied. *Id.* On appeal, this court held the defendant had waived any challenge to the plaintiff's status as the real party in interest by failing to object prior to the entry of default. *Id.* The supreme court

found this court correctly held the issues raised by the defendant, not having been timely raised prior to the entry of default, were waived. *Id.* at 171, 485 S.E.2d at 374.

The Bank first raised this issue in its Rule 59(e), SCRCP, or in the alternative Rule 60(b), SCRCP, motion to reconsider and to set aside judgment, after damages were awarded and the default judgment had been entered, much like *Bardoon.* Accordingly, this issue is not preserved for our review.

### B. Special Damages

 The Bank argues Solley is not entitled to special damages because she did not plead them. It further contends she did not prove the damages and they are excessive. We agree in part.

The trial judge has considerable discretion regarding the amount of damages, both actual or punitive. Because of this discretion, our review on appeal is limited to the correction of errors of law. Our task in reviewing a damages award is not to weigh the evidence, but to determine if there is any evidence to support the damages award.

*Austin v. Specialty Transp. Servs., Inc.,* 358 S.C. 298, 310–11, 594 S.E.2d 867, 873 (Ct.App.2004) (citations omitted).

 A defendant in default admits liability but not the damages as set forth in the prayer for relief. *Renney v. Dobbs House, Inc.,* 275 S.C. 562, 566, 274 S.E.2d 290, 292 (1981). The amount of damages in a default action must be proved by the preponderance of the evidence. *Id.; see Jackson v. Midlands Human Res. Ctr.,* 296 S.C. 526, 529, 374 S.E.2d 505, 507 (Ct.App.1988) ("A judgment for money damages must be warranted by the proof of the party in whose favor it is rendered.").

[T]here is a difference between a defendant being declared in default and subsequently having judgment entered against him for damages. By defaulting, a defendant forfeits his "right to answer or otherwise plead to the complaint." In essence, the defaulting defendant has conceded liability. However, a defaulting defendant does not concede the [a]mount of liability.

*Howard v. Holiday Inns, Inc.,* 271 S.C. 238, 241–42, 246 S.E.2d 880, 882 (1978) (citations omitted). At the damages

hearing, the defendant may only participate by cross-examining witnesses and objecting to evidence. *Id.* at 242, 246 S.E.2d at 882.

> In a default case, the plaintiff must prove by competent evidence the amount of his damages, and such proof must be by a preponderance of the evidence. Although the defendant is in default as to liability, the award of damages must be in keeping not only with the allegations of the complaint and the prayer for relief, but also with the proof that has been submitted.

*Jackson,* 296 S.C. at 529, 374 S.E.2d at 506 (citations omitted).

"[T]o maintain a claim for slander of title, the plaintiff must establish (1) the publication (2) with malice (3) of a false statement (4) that is derogatory to plaintiff's title and (5) causes special damages (6) as a result of diminished value of the property in the eyes of third parties." *Huff v. Jennings,* 319 S.C. 142, 149, 459 S.E.2d 886, 891 (Ct.App.1995). "Actual malice can mean the defendant acted recklessly or wantonly, or with conscious disregard of the plaintiff's rights." *Constant v. Spartanburg Steel Prods., Inc.,* 316 S.C. 86, 89, 447 S.E.2d 194, 196 (1994).

"Wrongfully recording an unfounded claim against the property of another generally is actionable as slander of title." *Huff,* 319 S.C. at 149, 459 S.E.2d at 891. "[M]alice merely means a lack of legal justification and is to be presumed if the disparagement is false, if it caused damage, and if it is not privileged." *Home Invs. Fund v. Robertson,* 10 Ill.App.3d 840, 295 N.E.2d 85, 87 (1973) (citing *Gates v. Utsey,* 177 So.2d 486, 488 (Fla.Dist.Ct.App.1965)). In *Huff,* 319 S.C. at 149–50, 459 S.E.2d at 891, the court found a jury reasonably could conclude the defendant published a false statement when she filed a lien she knew or should have known was invalid. "A publication is derogatory to the plaintiff's title if the publication disparages or diminishes the quality, condition, or value of the property." *Id.* at 150, 459 S.E.2d at 891. The court further found the defendant's lien clearly diminished the value of the property in the eyes of a third party, given that the plaintiff was required to discharge the lien before he could complete the refinancing of the property. *Id.*

In *Huff*, the defendant also contended that the plaintiff had no claim for slander of title because the lien was filed against only the plaintiff's former wife's interest in the property and thus did not encumber the plaintiff's interest in the property. *Id.* at 150 n. 2, 459 S.E.2d at 891 n. 2. In support of this argument, at oral argument the defendant relied on the rule that a cotenant may separately encumber his interest in property and such encumbrance binds only the cotenant's interest in the property. *Id.* The property was owned by the plaintiff and his ex-wife at the time the lien was recorded, and the lien specifically stated it was placed against the property of both of them. *Id.* This court found "[w]hile it may be true that, had the lien been foreclosed and the property sold, the lien could have been satisfied only through the [ex-w]ife's interest in the property, the lien nonetheless attached to the property as whole and affected the value of the property as a whole." *Id.*

"All pleadings shall be so construed as to do substantial justice to all parties." Rule 8(f), SCRCP; *see also Russell v. City of Columbia*, 305 S.C. 86, 89, 406 S.E.2d 338, 340 (1991) (holding to ensure substantial justice to the parties, the pleadings must be liberally construed). "[T]echnical, restrictive or outmoded requirements of Code Pleading are not necessarily required [under the SCRCP]." *Gaskins v. S. Farm Bureau Cas. Ins. Co.*, 343 S.C. 666, 671, 541 S.E.2d 269, 271 (Ct.App. 2000) (quoting Harry M. Lightsey, Jr. & James F. Flanagan, *South Carolina Civil Procedure* 93–94 (2nd ed. 1996)).

██ "Special damages recoverable in a slander of title action are the pecuniary losses that result 'directly and immediately from the effect of the conduct of third persons, including impairment of vendibility or value caused by disparagement, and the expense of measures reasonably necessary to counteract the publication, including litigation.' " *Huff*, 319 S.C. at 150–51, 459 S.E.2d at 892 (quoting 50 Am.Jur.2d *Libel & Slander* § 560; citing Restatement (Second) of Torts § 633). In *Huff*, the plaintiff paid the defendant the money demanded in the lien so that he could close the refinancing of the property. *Id.* at 151, 459 S.E.2d at 892. The court found, "The money paid to satisfy the lien was an expense necessary to counteract the publication and, therefore, constitutes special damages." *Id.*

[S]pecial damages in the context of a slander of title claim can take at least two forms. For instance, if a slanderous statement forces a party to sell land at a reduced price, the reduction in value is a realized loss that can form the basis of a damages award. Alternatively, a landowner may take legal action to remedy the effects of the slanderous statement. To the extent that this legal action is reasonably necessary to remove clouds from the party's title, the party may recover those attorney fees.

*Neff v. Neff,* 247 P.3d 380, 401 (Utah 2011) (footnotes omitted).

The *Huff* court relied on *TXO Production Corp. v. Alliance Resources Corp.,* 187 W.Va. 457, 419 S.E.2d 870, 879 (1992), in determining the elements for slander of title. 319 S.C. at 149, 459 S.E.2d at 891. The *Huff* court recognized that the *TXO* court had followed the guidelines the Restatement (Second) of Torts provided for those elements. *Id.* In *TXO,* the court observed, "Ordinarily, attorneys' fees are not considered damages. However, slander of title is a special case." 419 S.E.2d at 881. The *TXO* court found "[t]he appellees spent $19,000 responding to TXO's declaratory judgment action that the appellees would not have spent if TXO had not filed the false quitclaim deed and then sued the appellees in an attempt to steal their land." *Id.* The court followed "the clear majority rule in holding that attorneys' fees incurred in removing spurious clouds from a title qualify as special damages in an action for slander of title." *Id.* (citing *Rayl v. Shull Enters., Inc.,* 108 Idaho 524, 700 P.2d 567 (1984); *Chesebro v. Powers,* 78 Mich. 472, 44 N.W. 290 (1889); *Paulson v. Kustom Enters., Inc.,* 157 Mont. 188, 483 P.2d 708 (1971); *Den–Gar Enters. v. Romero,* 94 N.M. 425, 611 P.2d 1119 (N.M.Ct.App.1980), *cert. denied,* 94 N.M. 628, 614 P.2d 545 (1980); *Summa Corp. v. Greenspun,* 98 Nev. 528, 655 P.2d 513 (1982); *Dowse v. Doris Trust Co.,* 116 Utah 106, 208 P.2d 956 (1949); Restatement (Second) of Torts, § 633 (1977)).

The Restatement (Second) of Torts § 633, which describes slander of title as a form of the general tort of publication of an injurious falsehood, provides the following requirements for special damages:

(1) The pecuniary loss for which a publisher of injurious falsehood is subject to liability is restricted to

(a) the pecuniary loss that results directly and immediately from the effect of the conduct of third persons, including impairment of vendibility or value caused by disparagement, and

(b) the expense of measures reasonably necessary to counteract the publication, including litigation to remove the doubt cast upon vendibility or value by disparagement.

■■■ "[A]ttorney fees may be recoverable as special damages if incurred 'to clear title or to undo any harm created by whatever slander of title occurred.'" *Gillmor v. Cummings,* 904 P.2d 703, 708 (Utah Ct.App.1995) (quoting *Bass v. Planned Mgmt. Servs., Inc.,* 761 P.2d 566, 569 (Utah 1988)); *see Neff,* 247 P.3d at 400–01 ("In slander of title cases, attorney fees may be recovered as special damages if the fees are reasonably necessary to remedy the disparagement of the plaintiff's title."); *see also* 53 C.J.S. *Libel* § 323 (2005) ("Under some, but not all, authority, attorney's fees may constitute special damages in an action for slander of title or injurious falsehood.").

■■■ "[T]he trial court's award of attorney fees as special damages is discretionary in slander of title cases...." *Gillmor v. Cummings,* 904 P.2d at 709 (citing *Day v. W. Coast Holdings, Inc.,* 101 Nev. 260, 699 P.2d 1067, 1071 (1985)). "[T]he award of damages must be made on the basis of findings of fact supported by the evidence." *Id.* (citing *Cabrera v. Cottrell,* 694 P.2d 622, 625 (Utah 1985)). In Utah, when the trial court has not provided adequate findings of fact concerning the special damages incurred, the court has remanded to the trial court to properly determine the amount of damages that should be awarded. *Id.*

However, there is some disagreement among the courts as to whether or not the injured party, in order to establish special damages, must identify a particular prospective purchaser who was prevented by the slander from buying the disparaged property, some courts holding that a particular prospective purchaser must be identified, unless it is impossible to do so, and others that a particular prospective purchaser need not be identified.

James O. Pearson, Jr., Annotation, *What Constitutes Special Damages in Action for Slander of Title*, 4 A.L.R.4th 532, 537 § 2[a] (1981) (footnotes omitted).

The Utah Supreme Court has denied recovery when a party's claim for harm to the value of his property has been based on appraisal value instead of sale of the land at a reduced price, because the damages had not yet been realized. *Neff*, 247 P.3d at 401 (citing *Valley Colour, Inc. v. Beuchert Builders, Inc.*, 944 P.2d 361, 364 (Utah 1997) ("Proof of special damages usually involves demonstrating a sale at a reduced price or at greater expense to the seller. It is not sufficient to show that the land's value has dropped on the market, as this is general damage, not a realized or liquidated loss.")). The Utah court also reversed an award of attorney's fees when plaintiffs took no action to clear the clouds from their title, on the basis that the fees were gratuitous in the absence of proof of any other damages. *Id.* (citing *Bass*, 761 P.2d at 569).

In *Sullivan v. Thomas Organization*, the defendants asserted the plaintiffs "failed to allege 'special' damages, because mere unmarketability of title without the actual loss of a sale is not a compensable injury." 88 Mich.App. 77, 276 N.W.2d 522, 526 (1979) (citing 50 Am.Jur.2d *Libel and Slander* § 546, at 1065–66; William L. Prosser, *Law of Torts* § 128, at 920 (4th ed.1971)). However, the *Sullivan* court noted that "in *Chesebro*[, 44 N.W. 290], the [Michigan] Supreme Court held that reasonable expenses incurred by the plaintiff in removing the cloud from his title were recoverable as damages in a disparagement of title action." *Sullivan*, 276 N.W.2d at 526. The plaintiffs in *Sullivan* requested as relief the cloud on their title be removed, as well as costs and attorney's fees, and the court found this was a sufficient allegation of special damages. *Id.*

In determining whether it allowed attorney's fees as special damages, the Washington Supreme Court noted that it "adhere[d] to the American rule, which states that absent a contract, statute, or recognized ground of equity, the prevailing party does not recover attorney fees as costs of litigation. Nevertheless, we have also recognized certain circumstances where attorney fees should be recovered as damages." *Rorvig v. Douglas*, 123 Wash.2d 854, 873 P.2d 492, 497 (1994) (citations and internal quotation marks omitted).

The court found it had allowed attorney's fees to be recoverable as special damages in malicious prosecution and wrongful attachment or garnishment. *Id.* "In malicious prosecution, it has long been the rule that damages include the attorney fees for the underlying action made necessary by the defendant's wrongful act." *Id.* "Similarly, in wrongful attachment or garnishment actions, and in actions to dissolve a wrongful temporary injunction, attorney fees are a necessary expense incurred in relieving the plaintiff of the wrongful attachment or temporary injunction, and are recoverable." *Id.* (internal quotation marks omitted). The Washington court found:

> Slander of title is analogous to these actions. It is the defendant who by intentional and calculated action leaves the plaintiff with only one course of action: that is, litigation. In malicious prosecution, wrongful attachment, and slander of title, the defendants actually know their conduct forces the plaintiff to litigate. In addition, similar to malicious prosecution and wrongful attachment, actual damages are difficult to establish and often times are minimal in slander of title. Fairness requires the plaintiff to have some recourse against the intentional malicious acts of the defendant.

*Id.* The court noted, "The majority of jurisdictions that have considered the question in recent years have adopted this rule." *Id.* (citing *Rayl,* 700 P.2d at 573; *Summa Corp.,* 655 P.2d at 515; *Rogers v. Home Invs. Fund,* 10 Ill.App.3d 840, 295 N.E.2d 85 (1973); *Dowse,* 208 P.2d at 959). "The trend is to recognize that attorney fees and other legal expenses incurred in clearing the disparaged title are recoverable as damages in the common law action of slander of title." *Id.* (citing James O. Pearson, Jr., Annotation, *What Constitutes Special Damages in Action for Slander of Title,* 4 A.L.R.4th 532, 560 (1981)). Additionally, "the Restatement (Second) of Torts supports allowing recovery of attorney fees in a slander of title action. It describes slander of title as a form of the general tort of publication of an injurious falsehood." *Id.*

The Tennessee Court of Appeals has explained why attorney's fees are appropriate as special damages in slander of title cases:

> The sole way of dispelling another's wrongful assertion of title is by hiring an attorney and litigating. If the defamed

party were to simply speak out in denial, as he might with a character attack, he could risk completely losing title by adverse possession. The plaintiffs here were forced into court by the defendants' actions. They were required to hire counsel, take depositions, arrange for court reporters, and run up numerous other expenses. These costs, which represented the only possible course of action to clear their title, flow directly and proximately from the defendants' conduct. But for the defendants[' actions], the plaintiffs would not have incurred these expenses. As such, they represent an actual pecuniary loss that, if substantiated, should be recoverable as special damages.

The position we take today regarding proof of special damages and litigation expenses is supported by the Restatement (Second) of Torts. . . .

*Ezell v. Graves,* 807 S.W.2d 700, 703 (Tenn.Ct.App.1990).

In *Childers v. Commerce Mortgage Investments,* 63 Ohio App.3d 389, 579 N.E.2d 219, 222 (1989), the trial court found the defendant liable to the plaintiffs for, among other things, the entire amount for which they could have sold their house if not for the defendant's actions and allowed the plaintiffs to keep the house. The court found, "In effect, this gave the [plaintiffs] a double recovery, to which they are not entitled." *Id.*

 In this case, as the dissent and the Bank argue, the Bank's mortgage is a nullity. However, unlike the dissent and the Bank, we believe this makes Solley's action for slander of title even stronger. Recording a mortgage that is a nullity should be considered a false statement derogatory to Solley's title. Further, Solley's expert witness testified she likely would not have been able to obtain a loan on her share of the home due to Mullins's mortgage. However, Solley did not attempt to sell or mortgage her interest in the home. The majority view requires a party to actually suffer a loss, i.e. sell the property for less than it was worth, not be able to sell the home at all, or be unable to obtain a loan. Solley did not attempt to do any of these things. Solley and her attorney contacted the Bank to discuss the mortgage, and the Bank would not speak to her or her attorney about it. Solley had no other choice than to bring this lawsuit. Accordingly, she is

entitled to the cost of this litigation, which is the $150 filing fee and her attorney's fees and costs in bringing the action. Accordingly, we remand this action to the special referee to determine attorney's fees and costs.

## C. Punitive Damages

The Bank argues Solley is not entitled to punitive damages because at most it made a mistake in issuing the mortgage and did not harbor any ill will. In the alternative, it maintains the punitive damages are excessive compared to what it contends are Solley's actual damages, the $150 filing fee. We disagree.

 "The purposes of punitive damages are to punish the wrongdoer and deter the wrongdoer and others from engaging in similar reckless, willful, wanton, or malicious conduct in the future," as well as "to vindicate a private right of the injured party by requiring the wrongdoer to pay money to the injured party." *Clark v. Cantrell,* 339 S.C. 369, 378–79, 529 S.E.2d 528, 533 (2000). " 'Recklessness implies the doing of a negligent act knowingly'; it is a 'conscious failure to exercise due care.' " *Berberich v. Jack,* 392 S.C. 278, 287, 709 S.E.2d 607, 612 (2011) (quoting *Yaun v. Baldridge,* 243 S.C. 414, 419, 134 S.E.2d 248, 251 (1964)). "If a person of ordinary reason and prudence would have been conscious of the proba- bility of resulting injury, the law says the person is reckless or willful and wanton, all of which have the same meaning—the conscious failure to exercise due care." *Id.* " 'It is this present consciousness of wrongdoing that justifies the assessment of punitive damages against the tort-feasor....' " *Cody P. v. Bank of Am., N.A.,* 395 S.C. 611, 625, 720 S.E.2d 473, 480 (Ct.App.2011) (quoting *Rogers v. Florence Printing Co.,* 233 S.C. 567, 578, 106 S.E.2d 258, 263 (1958)). "In other words, 'at the time of his act or omission to act the tort-feasor [must] be conscious, or chargeable with consciousness, of his wrongdo- ing.' " *Id.* (quoting *Rogers,* 233 S.C. at 578, 106 S.E.2d at 264) (alteration by court). "A conscious failure to exercise due care constitutes willfulness." *Mishoe v. QHG of Lake City, Inc.,* 366 S.C. 195, 201, 621 S.E.2d 363, 366 (Ct.App.2005). " 'In any civil action where punitive damages are claimed, the plaintiff has the burden of proving such damages by clear and convinc- ing evidence.' " *Austin v. Specialty Transp. Servs., Inc.,* 358

S.C. 298, 313, 594 S.E.2d 867, 875 (Ct.App.2004) (quoting S.C.Code Ann. § 15–33–135).

In *Cody P.*, 395 S.C. 611, 720 S.E.2d 473 this court found the trial court properly denied the bank's motion for judgment notwithstanding the verdict (JNOV) on punitive damages. In that case, the plaintiff presented evidence that bank employees had not followed bank procedures when opening an account. *Id.* In the present case, Molony, Solley's banking expert, testified that anytime two people were on a deed, a banker would want both people to sign the mortgage, acknowledging the debt. He stated that was the practice for 28 years at the banks where he had been employed. He testified to loan money on a piece of property, one needs to look at who owns the property. He further testified that when putting a residential home loan on a piece of property, one needs to get the consent of all the owners. He testified he had seen no evidence in the loan document the Bank had contacted Solley. He stated that at his bank, as an owner Solley would be required to acknowledge the debt one way or the other and that the mortgage would encumber her property.

Both Solley's and Mullins's names were on the loan they satisfied in 2005 or 2006 for the Property from the Bank. Accordingly, the Bank was on notice Solley was an owner of the Property. The Bank asserted in a post-trial motion it was misled by Mullins. However, although we recognize the Bank was not allowed to present evidence because it was in default, no evidence of any fraud is contained in the record. Further, the deed on record with Jasper County was in both Mullins's and Solley's names and thus any documents or information by Mullins that Solley no longer owned the Property could have been easily verified by the Bank. Solley testified the Bank had not contacted her and she had no knowledge of the loan until over a year-and-a-half after Mullins had obtained it. Based on the banking expert's testimony, the Bank's failure to verify the owner of the Property was reckless. In her complaint against the Bank, Solley alleges the Bank was negligent and/or grossly negligent. Because the Bank defaulted, all allegations in the complaint are deemed admitted. Additionally, the evidence in the record indicates the Bank failed to have an attorney close the mortgage, as required by law. Further, even after being contacted by Solley's attorney, the Bank did

nothing to rectify the situation. Accordingly, the record contains sufficiently clear and convincing evidence for the special referee to decide to award punitive damages.

██ Because we are remanding this case for the special referee to recalculate the actual damages, we also must remand the award of punitive damages for determination in light of the new amount of actual damages. *See Reid v. Harbison Dev. Corp.*, 289 S.C. 319, 322, 345 S.E.2d 492, 493 (1986), *overruled on other grounds by O'Neal v. Bowles*, 314 S.C. 525, 431 S.E.2d 555 (1993) ("Generally, actual damages should not be separated from punitive damages for a retrial on actuals alone. Punitive damages may only be awarded if actuals are recovered, and therefore, retrial only on actual damages may be improper since punitive damages may change depending on the actual damage award. In the interest of justice and fairness to all parties, both actual and punitive damages should be reconsidered together on retrial." (citations omitted)). Because the special referee will make a new determination of Solley's punitive damages on remand, we need not address the Bank's contention that the amount of punitive damages was excessive. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (providing an appellate court need not review remaining issues when its determination of a prior issue is dispositive of the appeal).

## II. SOLLEY'S APPEAL

### A. Election of Remedies

Solley argues the special referee erred by requiring her to elect a remedy prior to the damages hearing. We find this issue unpreserved.

██ The record must show that the issue was raised in the trial court. *Zaman v. S.C. State Bd. of Med. Exam'rs*, 305 S.C. 281, 285, 408 S.E.2d 213, 215 (1991); *Reid v. Kelly*, 274 S.C. 171, 174, 262 S.E.2d 24, 26 (1980). A motion or an objection made during an off-the-record conference that is not made a part of the record does not preserve the question for review. *York v. Conway Ford, Inc.*, 325 S.C. 170, 173, 480 S.E.2d 726, 728 (1997); *see also State v. Carlson*, 363 S.C. 586,

595, 611 S.E.2d 283, 287 (Ct.App.2005) ("Whe[n] an objection and the ground therefore is not stated in the record, there is no basis for appellate review."); *Hundley v. Rite Aid of S.C, Inc.,* 339 S.C. 285, 306, 529 S.E.2d 45, 56 (Ct.App.2000) (finding arguments must be conducted on the record to be preserved for appellate review). Further, the appellant has the burden of providing an adequate record on appeal. *Harkins v. Greenville Cnty.,* 340 S.C. 606, 616, 533 S.E.2d 886, 891 (2000); *see also* Rule 210(h), SCACR ("Except as provided by Rule 212 and Rule 208(b)(1)(C) and (2), the appellate court will not consider any fact which does not appear in the Record on Appeal.").

 When an appellant acquiesces to the trial court's ruling, that issue cannot be raised on appeal. *State v. Mitchell,* 330 S.C. 189, 195, 498 S.E.2d 642, 645 (1998); *see also State v. Bryant,* 372 S.C. 305, 315–16, 642 S.E.2d 582, 588 (2007) (holding if an appellant conceded trial court's ruling was not prejudicial, he could not assert on appeal the ruling denied him a fair trial); *Ex parte McMillan,* 319 S.C. 331, 335, 461 S.E.2d 43, 45 (1995) (providing a party cannot concede an issue at trial and then complain on appeal).

 The record does not contain the Bank's motion for Solley to elect a remedy or the special referee's ruling on the matter. The record does include what seems to be a summary of an off-the-record hearing on the matter. The special referee stated:

> Let the record reflect that after the close of testimony in the case, that [Solley] elected to proceed in this matter on the cause of action for slander of title, which it appears from the facts presented one way or the other would be the probable cause of action and that's what [s]he's elected to proceed under as far as arguing damages.

The record also contains Solley's later request to be allowed to look further into which cause of action she wished to pursue. The Bank objected, stating Solley had "made the election, and [it] made [its] argument based on what was elected." The special referee stated, "I'm not going to change the ruling as far as what he's already moved and you've already elected, and I can't change that." Even though the motion is alluded to after the ruling has occurred, we do not have either side's

argument on it or the referee's actual ruling. Therefore, we find this issue unpreserved.

## B. Consumer Under Federal Law

▬▬▬ Solley maintains the special referee erred in finding she was not a consumer under federal law. An appellate court need not review remaining issues when its determination of a prior issue is dispositive of the appeal. *Futch v. McAllister Towing of Georgetown, Inc.,* 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999). Solley's being considered a consumer does not relate to the slander of title cause of action and instead seems to relate to the negligence cause of action. Accordingly, because the slander of title cause of action is the only action remaining, we need not consider this issue.

## C. Amending of Complaint

▬▬▬ Solley argues the special referee erred in failing to allow her to amend her complaint to conform to the evidence and issues actually tried. An appellate court need not review remaining issues when its determination of a prior issue is dispositive of the appeal. *Id.* Because of our determination the Bank's argument regarding pleading the elements of slander of title is unpreserved for our review, we need not reach this issue.

## CONCLUSION

Based on the foregoing, the decision of the special referee is

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

THOMAS, J., concurs.

FEW, C.J., concurring in part and dissenting in part.

I concur in Section II of the majority opinion. However, I would resolve the issues addressed in Section I by finding the special referee committed two errors of law: (1) awarding the amount of the loan as special damages and (2) awarding punitive damages. I would reverse the judgment of actual and punitive damages and remand for a new trial as to actual damages only, at which Solley must prove special damages

proximately resulting from the conduct the Bank admitted in default to be slander of title.

Solley is not entitled to the value of the mortgage as special damages because the mortgage is ineffective. Solley alleged she "has and holds title as a joint tenant with rights of survivorship to the above described real property." Because the Bank defaulted, that allegation is deemed to be true. *See Roche v. Young Bros., Inc., of Florence,* 332 S.C. 75, 81, 504 S.E.2d 311, 314 (1998) (stating "the defaulting party is deemed to have admitted the truth of the plaintiff's allegations").

Taking as true the allegation that Solley and Mullins owned the property as joint tenants with a right of survivorship, section 27–7–40 of the South Carolina Code (2007) prevented Mullins from encumbering the property. The statute states that if property is held by joint tenants with a right of survivorship, such

> joint tenancy includes, and is limited to, the following incidents of ownership: . . . (iii) The fee interest in real estate held in joint tenancy may not be encumbered by a joint tenant acting alone without the joinder of the other joint tenant or tenants in the encumbrance. (iv) If all the joint tenants who own real estate held in joint tenancy join in an encumbrance, the interest in the real estate is effectively encumbered to a third party or parties.

§ 27–7–40(iii)–(iv). Therefore, because the mortgage is ineffective to encumber the property, it was error for the special referee to award Solley $233,000.00 in actual damages.

The majority argues that the ineffectiveness of the mortgage makes Solley's slander of title action stronger. I do not disagree. However, because the Bank admitted liability for slander of title in default, the strength of Solley's case is not the issue. The issue is the amount of special damages. I would find it was improper for the referee to measure the award of special damages by the amount of the mortgage because the mortgage is ineffective and does not encumber the property.

The Bank argues Solley is not entitled to punitive damages. I agree. Solley's cause of action for slander of title against the Bank, even including allegations incorporated by reference, does not contain any allegation of reckless or willful

conduct. Therefore, even by admitting Solley's allegations in default, the Bank has not admitted liability for punitive damages. *See Mishoe v. QHG of Lake City, Inc.,* 366 S.C. 195, 201, 621 S.E.2d 363, 366 (Ct.App.2005) ("In order to receive an award of punitive damages, the plaintiff has the burden of proving by clear and convincing evidence the defendant's misconduct was willful, wanton, or with reckless disregard for the plaintiff's rights."). I would reverse the award of punitive damages.